Brevard, J.
The brief which has been furnished in this case, is believed to contain, substantially, all the leading facts and circumstances which are material, or necessary to be taken into consideration, in deciding upon it.
In giving my opinion, and the reasons which influenced it, 1 shall refer to the facts and circumstances said to have appeared in evidence, as they are detailed in the brief, without premising any statement of the case.
The action being in the nature of a writ of deceit, it is substantially founded on fraud ; and to entitle the plaintiff to recover, two things must concur, namely, fraud and damage. The suggestion of falsehood, or the suppression of truth, though an injury may thence result, will not afford sufficient ground for an action, unless süch immoral conduct has proceeded from & fraudulent motive, and *34 WaS an<^ calculated to produce an injury, or damage to the party complaining thereof, in particular, or to all others in generak This appears to me to be the true doctrine on this subject, although there are, I believe, respectable opinions which seem to favor a more extensive definition, and would give a wider range to the action. (3 D. and E. 51. 1 East. Eyre vs. Dunsford. 2 East. 92. 3 Bos. and Pul. 367. 6 Johns. 181. 3 Johns. 271.)
A naked wilful lie, or the assertion of a falsehood, knowingly, is certainly evidence of fraud ; but yet it is not conclusive evidence. An intention to deceive, is materialbut if the falsehood asserted or imposed, is, in its nature or character, calculated directly to defraud and injure some one in particular, or all persons’generally, an intention to deceive and injure any one who may be thereby deceived and defrauded, may be implied.
To authorize an application of this doctrine to the present case, so as to support the verdict which has been given, it ought to appear, clearly, beyond a reasonable doubt, that the words, “ paid and settled,” or whatever the words were, which the witnesses proved were inscribed on a list of bills, which was exhibited to them by Edwin Gairdner, as having been transmitted by him to the defendant, were, in fact, written by the defendant, or by his procurement. It is possible that the writing on that paper was all his handwriting, except the particular words which related to the bill in question, and that these words were not written by him. The evidence is not very satisfactory to my mind, that any part of the writing was his; but still less so, as it relates to the words which concern this particular bill. All circumstances considered, it appears to me much more probable, that the writing was not his, than that it was, notwithstanding the testimony of the witnesses which went to prove the contrary. The witnesses, no doubt, believed it was his writing; and it may be that they were not mistaken generally, although they did not examine the writing critically, with any view to detect a forgery ; but, as a very little alteration or addition was necessary, to effect the deception complained of, and as none of the witnesses have said that they, or either of them, directed their attention to that part of the writing which has had that effect, with any view to ascertain whether it, in particular, was in the handwriting of the defendant, I am induced, from other circumstances, to believe that this part of the writing was not his. At all events, I am not satisfied, that on such evidence, the jury were authorized to say that it was his ; and without that, the verdict cannot be supported.
*35 If the writing was written by the defendant, it must have been written by mistake, or through inadvertence, without a knowledge or consciousness of its falsehood ; or it was written to deceive Edwin Gairdner, who might have relied on some promise of the defendant to him, to take up the bill; or, lastly, it was done to effect the very purpose which it is said to have effected, and of which the plaintiff complains. The counsel who argued for the plaintiff, deny that it was written by mistake. They deny that it was written to deceive Edwin Gairdner. They charge the defendant with having written it for the express purpose of deceiving and defrauding the plaintiff.
It would be more charitable, and much more probable, in my opinion, to suppose, that if the defendant is the author in question, he wrote it, either through mistake, or to deceive his brother. The latter supposition may be made without imputing to him any great moral turpitude, if we should further suppose that he did not mean to defraud, but only deceive, for a time. But the charge of the plaintiff’s counsel would impute to him a deliberate and wilful falsehood, calculated to deceive, and in collusion with his brother, to defraud the plaintiff forever, of the amount contained in the bill, with damages, interest, and costs.
The counsel, however, were perfectly right to insist on the ground they did ; because on neither of the other hypothesis could the action be entertained. If it was an unintentional mistake, the defendant cannot be responsible. If it was intended only to deceive his brother, he cannot be liable, because it was not calculated to deceive and defraud any other person.
It appears to me extremely improbable, that it was done by him to produce the consequence complained of, as an injury. The defendant has been represented as a man of general probity, in great credit as a merchant, and laboring under no embarrassments, at any rate, not entangled in the ruinous transactions and speculations of Edwin Gairdner. It is difficult to conceive any benefit or gratification which he could expect to result to himself, from the fraudulent act. He was not indebted to Edwin Gairdner & Co. He had not bound himself to take up this bill, unless we can believe so without evidence. It cannot well be supposed ‘he would collude with his brother to deceive and defraud the plaintiff, in a case like the present, where so many circumstances were to concur, in order-to effect the purpose ; which circumstances must have been foreseen long before they happened; and where the object was so inconsiderable as it affected his brother, and of no consequence whatever *36 t0 himself. To descend to act a part so dishonest and base, without some strong motive, no man of common sense could ever be prevailed on ; and especially under the certain prospect of being detected and exposed. The only advantage which even his brother could hope to derive from the fraudulent act, would be a temporary relief from the demand of a single creditor. The deceptive representation could not be expected to operate an extinguishment of the claim. It could only afford time to carry on, more securely, fraudulent operations, to the injury of other persons, until the eyes of all should be opened at once upon the true character of these manoeu-vres. Is there any reason why we should believe that either the defendant, or Edwin Gairdner, was desirous of defrauding the plaintiff, rather than any other of the creditors of Edwin Gairdner &. Co. 1 It appears to me that he inclined to favor her, but was so immersed in debt, and so surrounded by importunate creditors, that he could not do it with convenience. Among so many who were to suffer by his contemplated failure, it was not singular that she, also, should be left unpaid. It has been considered as a harsh and injurious course, to attempt to exculpate the defendant, by presuming against Edwin Gairdner, that he exhibited a false writing to the plaintiff’s agents, in order to gain time. But is this course more harsh and injurious, than to indulge the supposition on which the action is founded, that both the brothers were guilty of falsehood and fraud 1 It has been said, however, that to warrant the belief, that the writing was forged, or any part of it, the evidence ought to be as strong and convincing as would be requisite to convict a party charged on an indictment for forgery. To this argument I cannot yield my assent. The forgery was not of such a nature as to furnish any ground for an indictment. It was calculated not to defraud the defendant, or even the plaintiff, but merely to excuse a breach of promise, or cover an antecedent fraud. It has been said, that fraud ought not to be presumed. To this I agree. But the question is not whether we are to presume fraud,, but whether the evidence does not prove fraud ; whether it does not authorize the presumption of a dispunishable forgery, in order to gain a temporary respite from the clamors and reproaches of an injured and disappointed creditor. Can it be said, with any propriety, that Edwin Gairdner was a man incapable of such conduct 1 In asking this question, I have no wish or intention, unnecessarily, to open thé wounds which his reputation may have received. I found nothing on common report, or extra-judicial knowledge. I rely .solely on the evidence reported in this case. What *37 is the proof it furnished ? That he was a man overwhelmed with debts: that for some time he had supported a false and deceitful credit, and saved himself from sinking under the incumbent weight of multiplied and increasing demands, by desperately catching at every thing which accident or deception brought within his reach : that during these struggles to protract the term of his mercantile existence, he resorted to various means to elude or satisfy his creditors : that he had deceived the plaintiff, by drawing a bill on a commercial house in London, where he had ño funds : that he persuaded her to rely on the defendant, (his brother,) to take up the bill on his account, when he had no right to promise this on the part of the defendant, in whose hands he had no funds : that the plaintiff, by her agents, was daily teasing and importuning him to satisfy her claim ; and might be prying into his circumstances, and might discover the embarrassments of his situation, and sound the tocsin among his numerous unsuspecting creditors: that he repeatedly assured her agents that the bill had been paid by his brother, when he must have known thé contrary, unless it can be believed that the defendant deceived him without any apparent motive: that his own wife was distressing him with earnest and pressing entreaties and remonstrances, in behalf of her friend, the plaintiff: that he must have calculated on a speedy and total bankruptcy, and could not, hope to deceive the plaintiff any time beyond the date of his general credit: and that no other or greater injury, or loss, was experienced by the plaintiff, in consequence of the forgery, if such it may be called, than would, in all probability, have befallen her, if the paper writing alluded to had never existed, or been shewn to her. In addition to all these things, let it be recollected, that after-wards, when the credit of Edwin Gairdner was fast on the decline, and he was applied to for the paper, it was not produced. It was unfortunately mislaid. He ‘promised to search for it, and produce it again to the plaintiff; but she saw it no more. After considering all these circumstances, the impression on my mind is little short of perfect conviction, that the writing, so much of it as related to the bill in question, being paid or settled, was a fabrication, not of the defendant, but of Edwin Gairdner ; and on that ground my opinion is, that the verdict is against evidence, and ought to be set aside.
[In May, 1813, the new trial came on in the Court of Common Pleas for Charleston district, before Breyakd, 3., and another verdict was found for the plaintiff.] — Ed.
The court, unanimously, granted the motion.