## TAYLOR v. VANDERVEER.

In Case for Seduction.    On Rule to show cause.

In cases of tort, the court will not set aside a verdict because it is against the weight of evidence, unless it manifests partiality, prejudice or intemperance in the minds of the jury.   Nor will a verdict be set aside because the jury have formed a judgment upon the evidence, different from the court.

*R. S. Field* and *P. D. Vroom* in support of rule.

*J. S. Green* and *S. R. Hamilton,* contra.

WHITEHEAD, J.    Upon the trial of this cause, the daughter testified to all the material facts.   The illicit connexion ; the birth of the child in plaintiff's house ; and the consequent expense and loss of service.

· She testified, that in the month of July, 1838, she went to live with the defendant as a servant to do housework.    The defendant is a married man, and has a family of children.    That on Wednesday night, Sept. 19, 1838, he came into her bedroom where she was in bed, had illicit connexion with her, and the child of which she was delivered on the 19th June, 1839, was the fruit of that connexion.    That he had never misused her before. That after she discovered her pregnancy, she left defendant's house ; was at service in the city of New York, and before her confinement, returned to her father's.

Upon two occasions previous to her delivery, the defendant sought and obtained interviews with her at her father's, when he furnished her with money and solicited her to go to a lying-in-house in an adjoining state, in order that the matter might not be known in the neighborhood.    And again, after the commencement of the suit, in the month of September, 1840, being then in company with her sister and some other young persons, the defendant called her aside and asked her, how she came to swear the child to him, after having promised him she would not?   She answered, *her father made her swear it to the father of the child.* He said it would have been a great deal better for her if she had not done it, as his father-in-law had died the spring before, and left him an independent fortune.

On her cross examination she testified, that while at service in New York, when she could no longer conceal her situation, she

was asked in the presence of some young people, if she was married ? She answered she was, and gave the name of a young man as her husband who had occasionally visited her father's family. She also testified, that after her delivery, she said to another young man, that if the child had been born four weeks sooner, it would have been his.

Her character for truth and chastity was assailed, and successfully if the jury believed the defendant's witnesses. And besides this, her account of the circumstances under which the alleged connexion took place, is confused and inconsistent. She also stands contradicted by other witnesses in several material statements made by her.

Her story however, is strongly corroborated by the testimony of her sister an unimpeached witness, who testified to the interviews between the defendant and the daughter at the house of her father, and the payment of the money prior to her confinement, and to the subsequent interview between them after the commencement of the suit. Upon the last occasion, she saw them step aside. Could not hear much, but heard him say, that his father-in-law had left him a fortune. At the first interview at her father's, after giving her the money, she heard him say to her, " *Sarah, remember what I told you.*"

It was also testified by the overseer of the poor of the township in which the plaintiff resides, that after the birth of the child, the defendant called on him and requested that he would meet him at the house of a magistrate on the 15th July, then following ; and upon asking the defendant the nature of the business, he replied it was rather of a private nature. He met him at the time appointed, when the defendant stated the object of the meeting was, to enter into bond to indemnify the township against the support of the child, and wanted to know if the witness was willing to take his brother-in-law as security. He further asked the witness if he would have the privilege of taking the child in case he entered into bond, and upon being told that the mother would be entitled to its custody for a limited time, he then inquired, whether at the expiration of the time he would be entitled to take it. This witness testifies that the defendant denied being the father of the child.

It was further testified by the sister of the defendant who was

a member of his family, that the daughter was at defendant's house on the night of the 19th September, 1838. Her testimony is, that Sarah went away from her brother's on Sunday the 16th and returned on Wednesday the 19th Sept. about noon.

There was no evidence that the father connived at the misconduct of his daughter, or had been guilty of negligence in watching over her conduct.

After a review of the testimony by the Judge, and an exposition of the law to which the defendant could not except, the jury rendered a verdict for the plaintiff for the sum of three hundred dollars.

This verdict is sought to be set aside; First, Because it is against the evidence in the cause ; and second, Because the damages are excessive.

It will be borne in mind, that this is a case of tort; and although courts claim the right to set aside verdicts in these cases, yet this right is only exercised when some rule of law has been violated, or the damages are such as " manifest passion, partiality, prejudice or intemperance in the minds of the jury." *Cowper's Rep.* 230 ; 1 *Southard's Rep.* 338 ; 2d *D. and E.* 166 ; 2d *Wilson*, 160. It was not pretended by the counsel for the defendant, on the argument, that there had been any error on the trial of the cause, either in the rejection or admission of evidence, or in the judge's charge to the jury.

The rights of juries are clearly defined in law ; they are the legal constitutional judges of facts, and courts are cautious how they invade their province. Actions of this nature are more peculiarly than others, exempted from the interference of courts, on account of excessive damages. 12 *Johns Rep.* 237.

If the verdict in this case is set aside, it must be, not because it is against the weight of evidence, for in no instance has a verdict in a case of this kind, been set aside on this ground, except for the particular reason I have before mentioned. 5 *Cowen's R.* 106, and cases there cited, but because there is no evidence of the main facts in the cause. This was the ground taken by the defendant's counsel on the argument.

In discussing this question, they succeeded in satisfying my mind, that this verdict, especially as to the amount, was against the weight of evidence. But further than this I cannot go. I

cannot adopt the conclusion, that there is no evidence of the material facts in the case. The daughter swears to them. She was a competent witness. True, her character for truth was impeached and I think successfully. But her credibility was properly submitted to the jury and they have passed upon it. From their finding, I presume they have given her more credit than I should have done, had I been in the jury box; but I am not for this reason to meddle with the verdict. There is no case to be found where courts have laid their hands on a verdict in a case of tort, because of a difference of opinion with the jury, as to the facts. The case of *Duberley* v. *Gunning*, 4 *D. and E.* 651, was an action for criminal conversation with the plaintiff's wife. Lord Kenyon, before whom the cause was tried, was of opinion, and so stated in his charge to the jury, that the plaintiff had been guilty of gross negligence and inattention to his wife's conduct with respect to the defendant, and that this circumstance should go far in mitigation of damages. The jury, however, viewed the evidence differently from his Lordship, and rendered a verdict for five thousand pounds. On rule to show cause why the verdict should not be set aside on the ground of excessive damages, Lord Kenyon said, " according to my judgment of the case, I think the damages are a great deal too much; nay, I should have been satisfied even if nominal damages only had been given; but as the jury have formed a different judgment upon the evidence, I know not why my judgment should be preferred to theirs, upon such a subject," and of that opinion were the court. The same language substantially has been held by courts since, in cases of this kind. In the case of *Ward* v. *Center*, 3 *John. Rep.* 271, Vanness, judge, in delivering the opinion of the Court upon rule for new trial says, " Fraud is a crime. It is never to be presumed, but must be conclusively proved. I think that I should never have given such a verdict as the jury have found in this case." Yet in the conclusion of his opinion he says, " that it is not expedient to interfere with the verdict. The question of fraud has been fairly submitted to the jury, and they have found against the defendant. They had a right to do so; though I may wish that they had done otherwise."

It is insisted again, there is no evidence that the defendant is the father of the child. In addition to the testimony of the

daughter, there is evidence, that the defendant thought he was, or that he probably was the father. How else can we account for his seeking interviews with her at her father's house, previous to her confinement, and paying her money as testified to by the daughter and corroborated by her sister? or his seeking her out after the commencement of the suit, and charging her with a violation of her promise, not to swear the child to him? What did he, a married man and the father of a family mean, by talking with this girl about the fortune left him by his father-in-law, as a reason why he would have done better for her than she would do by suit against him? If the jury believed these witnesses, they had a right to presume, that the defendant considered himself the father of the child. There is besides, the evidence of defendant's sister, that the daughter was at his house at the time the connexion is said to have taken place. In addition to this, is the evidence of the overseer of the poor, which, however it may be explained away by the court or the counsel, might be considered by the jury, as evidence of the defendant's guilt.

Under these circumstances, for the court to set aside this verdict, upon the assumption, that there is no evidence of the material facts necessary to sustain the action, would be an unwarrantable encroachment upon the jurisdiction of the jury.

It is said, again, that as there was no loss of character, the damages, if any could be recovered, should only be sufficient to cover the expenses of lying in and loss of service. The judge who tried the cause was clearly of the same opinion, and so charged the jury. He stated explicitly, that in his opinion, it was not a case in which the jury could rightfully award any thing for the destruction of the girl's character, the ruin of her prospects and hopes. By her own account of herself (said the judge) as well as by the account of others, she was prostitute, abandoned, depraved in the last degree. But whether they would give any damages, and if so, what amount, was submitted to them as being a matter peculiarly within their province. The jury viewed the case differently from the judge. They *formed a different judgment upon the evidence.* They had a perfect right to do so : and as the verdict does not *manifest passion, partiality, prejudice or intemperance in the minds of the jury ;* and as

there has been no rule of law violated, I do not feel at liberty to interfere with their finding.

HORNBLOWER, C. J. concurred. ELMER, J. did not hear the argument.

WHITE, J. This action is brought by the father of Sarah Taylor, to recover damages for debauching his daughter and getting her with child. It was tried at the Mercer Circuit, before his honor Justice Dayton, and a verdict rendered for the sum of three hundred dollars.

On the return of the postea, the defendant took a rule on the plaintiff to show cause why a new trial should not be granted, and has assigned for reasons to set aside this verdict, First, That the verdict is against the weight of evidence; Second, That the credit of the daughter, the principal witness in the cause, was impeached; Third, That the damages assessed by the jury, are excessive.

Is the verdict against the weight of evidence? . Sarah the daughter, the only witness who could testify to the fact, swears that the defendant had connection with her in his own house, in September, 1838, and of that connection, the child which she bore and of which she was delivered on the 19th of June, 1839, was the fruit. And who says or can say, that she has not testified as she believed the fact to be. She stands uncontradicted in this matter, and as this verdict must stand or fall on the evidence of this witness, we must look to the other evidence given on the trial, to find whether any credit should have been given to her testimony; for with it, the verdict cannot be against evidence, and without it, the verdict cannot be supported.

Does the defendant at any time or in any way deny his having had connection with her? Does he not on the contrary tacitly admit the fact of connection? Does he not do so when he acknowledged or said, "if the child was not born by the first of June, it could not be his?" And that if it was a boy, he would take care of it and give him education. If perfectly free and clear of all chance of being the father, why persuade the girl to go out of the state to be confined? Why give her money? Why visit her at her father's house before her confinement? Why the

Taylor v. Vanderveer.

interview, after the charge made, at the College at Princeton? Why make her promise not to swear the child to him; and why say if she had not it would have been better for her, as his father-in-law had died and left him a fortune? Conscious innocence would I think have produced a different line of conduct. The defendant did, to be sure, to Mr. Anderson the overseer of the poor, when called on to maintain the child, say, he was not the father of it, and that it was hard he should be brought into trouble or difficulty for a thing of which he was innocent; and he may have thought he was not the father; but he did not deny ever having connection with the mother; nor does the evidence show, that he ever, in the presence of the girl, denied being the father, or accused her of charging him falsely. He only accused her of not performing her promise to him.

From facts and circumstances testified to by Sarah Taylor, in which she is sustained by other witnesses, and from the declaration of the defendant, I think it was a fair conclusion, that the defendant was not without spot or blemish. And then we see a man with a wife and daughters around him, seeking criminal intercourse with a domestic, in his own house; and is it uncharitable to say, that his character for purity and good morals, and the girl's for chastity, may be laid on the same shelf to rest.

If the fact of connection was established, is there such an improbability in the story told by the girl, as that the jury were bound to believe, that the defendant was not the father of the child. The girl, the only created being who could speak to that matter with certainty, proves it. And what is there in her relation of the matter, to authorize a belief, that she swore to a falsehood? It may be said she was a willing subject. Perhaps so; and if this had been a matter of consent on her part and an arrangement between them, was it to be expected that she, when the defendant came into her room, would make a noise about it; or was it to be expected that they both knowing where aunt Abigail slept, and the vicinity of her bed or her good ears, and of the thin partition, would talk much, when there was no necessity for it? Admit that the girl was as willing as the defendant to do and keep secret; was it to be expected that she, more than he, would next morning tell Mrs. Vanderveer any thing about it: or admit the fact. If the charge had been of an assault or violence

by the defendant, against her will, then to be sure her silence would have been strong evidence in the defendant's favor; and the inquiry made by the justice, why she did not make a noise and alarm Mrs. Vanderveer, would have been very pertinent, and her answer of much importance.

But the general character of this witness, the daughter, is inquired into; and though her character for truth and chastity may be questioned, yet I cannot adopt the language of the learned judge who tried this cause, and say that her character for truth and chastity has been so successfully impeached, that it would be unsafe to convict a respectable man of such an act of turpitude, on her evidence alone. I cannot think so. What motive could she have had to charge the defendant falsely, in preference to any other whom she could have charged truly? She was pregnant and unmarried, and all her interest and feelings, every thing which could be brought to bear on her mind, would tend to induce her to have accused some other intruder, if she could have done so with truth. The defendant was a married man; she could not pretend that she was deceived by honorable offers of marriage. She could not expect to recover of the defendant, any money by suit. Whatever her father might do.

But witnesses were called who spoke lightly of her character for truth and chastity. Mr. Ellis says, that she lived with him in 1834, and sometime afterwards, and that her character was that of a liar, and her character for chastity not good, that she kept bad hours and bad company. Miss Abigail, the sister of the defendant, speaks of the witness and gives it as her opinion, that her character for truth was very bad, and she would not believe her under oath, and that she had heard Isaac Vanderveer and the sister and brother of the defendant, and also Mrs. Brearley speak of her character for truth and veracity; and that before Sarah left them, they told her they did not want her, and would not pay her the same wages they had given her. This is the substance of the evidence of her bad character, previous to her leaving the employ of the defendant in 1838.

All the other witnesses who speak of Sarah Taylor's character for truth and want of chastity, were persons who knew her not until she went to live in the city of New York, in the winter of 1838; after the defendant had exacted a promise from her,

that she would not swear the child to him, and after her father had told her she could not stay in his house at home unless she swore the child to the person who was the father of it. At the time she went to New York, or soon after, her personal appearance told her case and her character for chastity, unless she could cover her shame by having the reputation of being a married woman. She did so pretend and say. She was in New York at service; and in this condition she happened to be in company with the two other Sarahs and Miss Bridget Cash, all of whom have testified, that her character for truth and chastity was bad; and say she kept bad company and bad hours.

Mr. Ellis speaks of her character as a liar, at the time she lived with him, being then about thirteen or fourteen years of age; and Miss Abigail knew her at about nineteen.

This evidence of her bad character for truth and chastity, and the discrepancy in her story about Mrs. Vanderveer's being from home; and her declarations about Jones and Hughes, were the matters pressed on the jury as facts which should put down the evidence of the girl, but those facts and the conduct and the declarations of the defendant, were fairly put to the jury by the judge, for their consideration; and the jury were brought to this point: either to believe that the defendant was the father of the child, or that the mother, Sarah Taylor, had sworn false, wilfully false. They by their verdict say, they believe her story; and I am not prepared to say they should have done otherwise.

On this application to the court, it is not sufficient for the court to think, that on the evidence, the jury might have come to a different conclusion with propriety; but there should be some fact well established by the testimony, which was inconsistent with the evidence of the impeached witness, or such a train of circumstances in the case, as to render her story extremely improbable, or the evidence of bad character for truth should have been so strong as that no credit ought to have been given to her evidence.

I do not think the verdict in this case is so decidedly against the weight of evidence as to justify the court in setting it aside on that ground.

But another ground is urged. The damages assessed by the jury are said to be excessive. On this ground, courts seldom in-

terfere with the finding of the jury, in actions of this nature; and though it is true, that the loss of service and expenses of lying in are the foundation of the action, and without them it cannot be maintained ; yet when the foundation is laid, it will bear a verdict for a sum far exceeding the real loss or expenditure, and of that extent, the jury are the proper judges ; and unless a court can see that they have transcended all reasonable bounds, such as will cause a suspicion that they have been actuated by impure motives, or have totally disregarded the evidence in the cause, they will not be disposed to interfere with or set aside a verdict, merely on this ground.　This is a case where a father who has not connived at any improper conduct of his daughter ; who had no knowledge or reason to believe that her character for chastity was bad, or her conduct loose or improper, has suffered her to go to service, to obtain for herself the means of support by her labor, and that in a family of a man of character, in his neighborhood, in the country where he could see her and she could visit home occasionally, and that daughter an infant, returns to his house, prostituted, disgraced, turned out of employ, pregnant by the very man on whom he had confided : and they found a verdict for three hundred dollars, against one fully competent to pay, and this is said to be excessive to such an extent as to justify a court in the exercise of sound discretion to set that verdict aside.

In the case of *Swain* v. *Hall*, reported in 3 *Wilson*, Wilmot, Chief Justice said, where a verdict is contrary to the evidence, or where there is no evidence to support it, the court will grant a new trial ; but where there has been evidence on both sides, the court have never granted a new trial, notwithstanding the judge who tried the case, has been of opinion, that the weight of evidence was the other way.　He says the jury are the legal constitutional judges of the fact.　And in the case of *Tullidge* v. *Wade*, 3 *Wilson*, 18, the same judge said, that actions of this sort are brought for example sake, and though the damages may not amount to twenty shillings, and the jury gave fifty pounds ; the jury did right in giving liberal damages.

In another case where the verdict was for the plaintiff, and tho' the judge thought the verdict should have been for the defendant ; on motion for a new trial, the court say, the jury are the

proper judges, (where there is evidence on both sides,) which scale preponderates, and it cannot be said to be a verdict against evidence; and the same rule is laid down where the evidence to support the verdict, was weak; and the judge, as in this case, charged in favor of the defendant.

In the case of *Akerley* v. *Haines*, 2 *Caines' Rep.* 291, it is said, that it is no defence in an action, *per quod, &c.*, that the daughter was unchaste, unless the father connived at her criminal intercourse, but it would affect the amount of damages.

In the case of *Perkins* v. *Procter and Green*, in trespass, tried before Wilmot, Chief Justice, and forty pounds damages given; on motion for a new trial on account of the excessiveness of damages, which was refused, Chief Justice Wilmot said, I should have been well satisfied if only forty shillings had been assessed. But as the jury, who are in all cases the constitutional judges of damages, and who in the present case had all the circumstances under their consideration, have thought proper to assess damages to the amount of forty pounds; what they have done is by no means such an arbitrary or excessive use of their power of assessing damages, as to make it proper for the court to interpose by granting a new trial.

In 2d *D. and E.* 168, *Bennett* v. *Allcott*, the court say, upon the whole case, the damages are not excessive; because, though the mother, who had introduced the defendant into the daughter's bed chamber, where she was on the bed, acted imprudently, yet the defendant was very culpable, he was in the house on honorable terms, and confidence was placed in him. Ashurst, Justice said, it is true the damages are considerable, and if we had been on the jury we might have been disposed to give a smaller sum, but in this species of injury, the court will not try that fact. And in 2 *Southard*, 847, the court say, although the damages seem high, yet as some of the witnesses swore to more than was given, and the jury were the best judges of the amount, the verdict for that reason cannot be set aside.

On the whole case, I think the jury have done right in finding a verdict for the plaintiff, and I am not prepared to say, that they have found a verdict for more than the case would warrant. I can see nothing in the case which calls for the interference of the court with the verdict. Let the rule to show cause be discharged.

NEVIUS, J. This suit was brought by plaintiff against the defendant for seducing his daughter, tried at the Mercer Circuit and a verdict rendered for the plaintiff for three hundred dollars. No questions were reserved upon the trial and no exceptions taken to the evidence or charge of the court. Still the defendant insists that the verdict should be set aside.

First, Because it is against the evidence.

Second, Because it is against the weight of evidence; and

Third, Because the damages allowed were excessive.

The case as presented to us shows, that the plaintiff is a laboring man, in indigent circumstances, with a family of eight children, most of them minors. That Sarah, one of his daughters, aged about twenty years, was employed as a servant for wages, in the defendant's family and resided with him in the month of September, 1838, and towards the close of that month, left his service. That on the 19th of June, 1839, she gave birth to an illegitimate child.

This daughter was the principal witness and testified, that in September, 1838, and a short time before she left the defendant's employ, he came to her bed room one night after she had been asleep, and there had intercourse with her, and that he is the father of the child. If these facts were true, and they were not and could not be contradicted by direct and positive proof, it cannot be said, that the verdict was against the evidence.

But the defendant insists, that this witness is not entitled to credit, that she contradicted herself and was contradicted by others, that her character for truth was impeached and that no reliance should have been placed on her evidence. It is true, that upon a severe and searching cross examination by the defendant's counsel, we find some discrepancies between what she said under oath and what she had said on former occasions touching this matter, and even the account given by her under oath is not free from inconsistencies, yet when we consider the age, sex and condition of the witness, the subject matter of the examination, the zeal and ingenuity with which the action was defended, it is by no means a matter of surprise, that some discrepancies should appear upon the written evidence as exhibited to us, even if we suppose the witness designed to tell nothing but the truth

She is however, corroborated in some facts, which if true, would strongly indicate the defendant's guilt. His visiting her at her father's house in April preceding the birth of the child, and also on another occasion, and there paying her money, his private interview with her at Princeton, in which she is confirmed by her sister, tend strongly to show a consciousness of guilt on his part. The jury were the judges not only of the effect of the testimony, but of the credibility of the witnesses, and if upon a careful examination of the evidence, I should have arrived at a different conclusion, I should nevertheless not feel warranted in setting aside a verdict for that reason. They had the witnesses before them, and a much more favorable opportunity of forming a correct estimate of their credit, than is presented to us by the written evidence here produced. But upon such examination as I have given the case, I cannot say, that I should have come to a different conclusion.

As to the objection, that the damages are excessive, it has been argued, that if the plaintiff was entitled to recover at all, it could only be for actual expenses incurred by him, and actual loss of service. In ordinary cases where damages are to be awarded by a jury, and no specific rule prescribed by law by which they are to be liquidated, the judgment of the jury upon the evidence, is final, unless it can be shown that there was a clear mistake, or unless the damages awarded are so exorbitantly high as to evince that they were controlled by feelings of prejudice passion or partiality. Here however it is contended, that the law and the charge of the court limited the jury to the amount of actual expense incurred and actual loss of service. These constitute unquestionably the basis of the action, but the plaintiff may recover a pecuniary compensation for the disgrace and dishonor done himself and his family by this injury, for his own wounded feelings and the blasted reputation of his child. The defendant however, contends, that for the latter cause the plaintiff can have no claim, that the daughter was profligate and abandoned, her reputation sullied, her chastity gone before any intercourse with her on his part. That he did not seduce her. There is undoubtedly evidence of looseness of moral principle on the part of the daughter. This evidence however, antecedent to the time of the alleged connection, principally affects her charac-

Taylor v. Vanderveer.

ter for truth. That which impeaches her character for chastity is subsequent to that time, and the jury may have believed, that this connection had caused the very profligacy which she evinced in her conversation with Hughes and her female associates in New York. It is true, that one witness, Dr. Ellis, has testified, that in 1834, her character for chastity in the neighborhood, was very bad. But it must be recollected, that at that time she was only fourteen years of age, and it is somewhat strange that at so early a period of life, as yet a mere infant, she could have established any character at all. What she said to Hughes, after the birth of the child, about his being its father, had it been born a few weeks before, cannot be looked upon in any other light than as a mere idle and unmeaning taunt, for I cannot well conceive, that a man in his senses would have repeated the remark had he been conscious there was truth in it.

Upon the whole, I do not see that the damages awarded by the jury are such as were not warranted by the evidence ; and am of opinion, that the rule be discharged with costs. 5 *Cow.* 106 ; 3 *Wil.* 18.

*Rule discharged.*

CITED *in Harrison* v. *Newkirk, Spencer* 178 ; *Moore* v. *Cent. R. R. Co.,* 4 *Zab.* 278 ; *Magee* v. *Holland,* 3 *Dutch.* 96 ; *Renck* v. *McGregor,* 3 *Vr.* 71.