SARGENT *against* ———.

Where the defect, or objection, appears upon the face of the declaration, the remedy is by motion in arrest; not for a new trial, even though, upon motion for a nonsuit at the circuit, the judge reserve the point.

CASE for seduction, tried at Otsego Circuit, February 12th, 1824, before NELSON, C. Judge.

Where a widow bound her daughter an apprentice, who was seduced, upon which the indentures were cancelled by consent, and the daughter returned to the mother's house, and lay in there; *held*, that an action on the case lay for the seduction, at the suit of the mother.

Courts will not set aside verdicts in this, and the like actions, for excessive damages, unless they are so very excessive as to warrant an inference of prejudice, partiality, passion or corruption in the jury.

Affidavits of jurors may be received to show that they adopted a principle in estimating damages not allowed by law; otherwise, as to the personal misconduct of any of the jury.

As where, in case, by the mother for seducing her daughter, they allowed her a sum for bringing up the daughter's child, the fruit of the illicit connection. Damages should not be allowed on this ground.

Where, in such an action, the daughter swore that she was gotten with child on the evening of Friday, the 13th of June, a time when the defendant was in fact 30 or 40 miles distant from her, it appearing by the defendant's affidavit, &c. that he could not know, and had no reason to suppose she would fix on that time; so that he could be able to meet the evidence by proof of an *alibi*, and accordingly he did not attempt to prove the *alibi* upon the trial; *held*, that he should have a new trial, in order to produce evidence to this point; the case not coming within the objection that the evidence was merely to impeach the testimony of a witness; for it would go to disprove the main fact in question upon the trial; nor was it within the objection of being cumulative.

Where the testimony is contradictory, and the credibility of witnesses are in question, it is the peculiar province of the jury to weigh and determine upon it. The court will not, therefore, interfere with their verdict, on the sole ground that it is against the weight of evidence.

The declaration was entitled of May term, 1822; and stated that Eliza Bowen, the daughter of the plaintiff, a widow, was, September 27th, 1816, (then aged eleven years, three months, and three days,) bound by indenture, as servant to P. F. of the town of Butternuts, in Otsego county, till eighteen years of age; that she was debauched by the defendant, May 31st, 1821, while at service with P. F. under the indentures; and becoming pregnant, the indentures were cancelled by the parties, August 18th, 1821, and the daughter returned to the service of the plaintiff; and that on the 24th of February, 1822, while yet an infant under twenty-one, and in the service of the plaintiff, she was delivered of a male child, *per quod*, &c.

The daughter was, as usual, the principal witness for the plaintiff, upon the trial; and swore that she first saw the defendant, who dined at her master's house, she waiting upon the table, on Friday, June 8th, 1821. He, at that time, said nothing to her. The next time she saw him, was on the afternoon of the Sunday following, June 10th. He came to her master's that day, while the family were gone to church, leaving her and Julia Edson, another servant in the family, at home. He came into the kitchen door where they stood, asked for a drink of water, went with them into the kitchen, and staid some time; they all three went together up stairs into the school room, where there was a bed; and after Julia had left them and gone down, the defendant there had connection with her. He kissed both her and Julia in the kitchen, when the witness ran up stairs, and Julia followed her, and the defendant came up after them. They all sat down on the bed a few minutes, when Julia got up, went out, and left the defendant alone with the witness, who did not ask Julia to stay, but only asked her, as she went out at the door, not to leave the witness alone. They remained in the room ten or fifteen minutes. The defendant held her fast, and asked her to stay, but she did not suspect what he wanted of her. She did not know that the door was locked after Julia went out. The defendant had connection with her twice in the school room after Julia went out. He promised her (and she believed him) that if any

thing happened, he would take care of her for life. The next time the defendant saw her, was Wednesday evening, (June 13th.) He came to her at her master's wood house, where she was picking up chips. No previous appointment had been made; but on his request, she went with him to the alders, on the bank of a neighboring creek, where she had connection with him once. They were there about half an hour or three quarters. She believed, that at that time she became with child by him.

This witness having proved the other facts recited in the declaration, the plaintiff rested. Her mother resided in Boston, Massachusetts, where the child was born.

The defendant's counsel then moved for a nonsuit, on the ground, that the action was not sustainable by the mother, as the injury was alleged and proved to have been committed, while the daughter was an indented servant of P. F.

The Judge denied the motion; but reserved the point.

The defendant's counsel then read a deposition of P. F. the master, taken by consent; and introduced several witnesses, viz. Julia Edson, a servant with the daughter, Richard Hughes, and Crowell Gifford, hired men at her master's in 1820 and 21, Caty Edwards, intimately acquainted with her, in the spring of 1821, and Doct. Wing, a physician in the town of Butternuts.

P. F., Julia Edson and Caty Edwards proved several instances of loose, familiar and improper conduct in the daughter, especially with the men servants of P. F. in consequence of which he had made up his mind to discharge her in April, 1821, but was deterred by her humble and supplicating entreaties, and promises of amendment; and Hughes and Gifford proved positively that she had had carnal connection with men, a little time before that sworn to by her with the defendant.

Witnesses were also sworn on the part of the plaintiff; who proved that Julia Edson, Caty Edwards, Hughes and Gifford, had repeatedly admitted, in general terms, either that the daughter's conduct had been proper, or that they knew nothing against her.

The counsel for the plaintiff, in summing up, admitted that the plaintiff did not claim there was any seduction; but they contended that the facts showed the defendant to be the father of the child.

Verdict for the plaintiff, for $920 damages.

A motion was now made in behalf of the defendant for a new trial, not only upon the above case; but also because, as was now shown by affidavit, the plaintiff's counsel upon the trial, in summing up to the jury, besides claiming for expense and loss of service, told the jury, that they should find a sum for the plaintiff sufficient to support and bring up the child till it was of an age to support itself; which, not being corrected by the Judge in his charge, two of the jury swore was allowed by the jury; and one of them swore that this made $900, out of the $920 which they found; $20 being all they would have allowed for expense and loss of service; and that they allowed nothing for violating the daughter's chastity, or corrupting her morals.

Another ground of the motion was surprise upon the trial, that the daughter should have sworn to the connection by which she became pregnant on the evening of Wednesday, the 13th of June, 1821; whereas the defendant could prove by several witnesses, (and he produced their affidavits to this effect,) that he was travelling in a wagon, a considerable distance from her master's, on his way to Albany, at the very time of the alleged connection; and had been so travelling during the whole of the 13th of June, 1821.

Other particulars, both as to the case and affidavits, will be found stated in the opinion of the Court.

*T. J. Oakley,* for the defendant.

1. The action was not sustainable by the mother. The relation of mistress and servant did not exist at the time of the injury. The master alone could sue. The mother had no right to recall the child to her service. Had she left her mother, without an intention to return, though not indented, this action would not lie at the suit of the mother. (*Martin* v. *Payne,* 9 John. Rep. 387. 3 Bl. Com. 142, and

Christian's note (13,) citing 4 Burr. 1878.   Selw. N. P. 1083, 4.)   The seduction is the gravamen ; and this must be followed by, and combined with loss of service.   Neither is sufficient of itself to sustain the action.   Neither the whole, nor any part of the cause of action, could be trans· ferred from the master to the mother, by cancelling the in dentures.

2. It was impossible for the defendant to anticipate the bearing and importance of the newly discovered evidence ; and in that sense it was out of his power to produce it.   This part of the case is plainly within *Jackson* v. *Laird*, (8 John. Rep. 489.)

3. I am aware of the general rule, which forbids the affidavits of jurors, in impeachment of their verdict ; but I apprehend the rule relates to an impeachment, by showing some personal misconduct, not to a plain misconception of the principle or law of the case.   In *Smith* v. *Cheetham*, (3 Caines, 57,) the Court received affidavits of the confes· sion of the jury as to their misconduct.   The reasoning of Livingston, J. is certainly very forcible in favor of going this length, and indeed receiving their affidavits.   And Kent, C. J. who was opposed to him, received the affidavits of the constable as to the manner in which the verdict was formed.   The Court may certainly then hear of this from affidavits ; and our view of the case is sanctioned by the introduction to the opinion which Woodworth, J. delivered in *Williams* v. *Baldwin*, (18 John. Rep. 489.)   It is evident from his language, that the Court must have inquired into the principles upon which the jury proceeded ; and probably through affidavits of the jurors themselves.

To say that affidavits must in all cases be excluded, under the notion of some technical rule, is certainly losing sight of good sense.   I think it will be found that all the cases excluding jurors' affidavits, go upon the impeachment of their conduct.

4. The damages are excessive, and the verdict against evidence.

*S. A. Foot* contra. The error upon which the defendant's counsel sought to nonsuit us upon the trial, appears upon the face of the declaration. It is not, therefore, the subject of such an objection; but be it ever so great a defect, the remedy is only by moving in arrest of judgment. (*Meyer* v. *M'Lean*, 1 John. Rep. 509. *Smith* v. *Elder*, 3 id. 105, 113. *Van Vechten* v. *Graves*, 4 id. 403.)

But the cause of action is well stated. The daughter was to serve till 18, not 21; and the indentures were cancelled before 18. Fictions and constructions have been resorted to in support of this action. There need not be an actual, but the constructive relation of master and servant is enough. Absence from the father's house is no objection, if the child be under age, (*Nickleson* v. *Stryker*, 10 John. 115;) and though I need not, yet I might, in this case ask the Court to go on the mere relation of parent and child. The disgrace and moral desolation of families, evil example, the violation of the good order of society, &c., always enter into this action.

In *Martin* v. *Payne*, Spencer, J. puts the case of a daughter absent at a boarding school; and Judge Reeve, in his treatise on domestic relations, 292, puts the very case under consideration, as forming the proper subject of an action upon general principles. Here, too, the master has abandoned the child, and turned her over to the parent. Should the action in such a case, or indeed in any case, depend on the mere volition of the master? There was an intention to return, within the cases. There was an actual return, and consequential damages, the object of an action on the case, as contradistinguished from trespass. Three Justices might have dissolved the contract of binding, (1 R. L. 139;) and the parties have done no more than would have been done under the statute.

Suppose a daughter seduced by the master himself, and discharged by the Justices, or by consent of parties, is it to be endured that the injured parent shall have no remedy? Yet she has none, if all depends upon the will of the master.

The Court will not interfere in actions of this kind, either upon the ground of excessive damages, or that the

verdict is against the weight of evidence. (*Coleman* v *Southwick*, 9 John. Rep. 45. *Southwick* v. *Stevens*, 10 id. 443. *Ward* v. *Center*, 3 id. 271. *Jarvis* v. *Hatheway*, id. 180, 183. *Feeter* v. *Whipple*, 8 id. 369. *Woodward* v. *Paine & Lake*, 15 id. 493.)

It is well settled, that where the party comes upon new ly discovered evidence, he must show due diligence to ob tain it in the first instance. The least laches are an objec tion. (*Hollingsworth* v. *Napier*, 3 Caines' Rep. 186.) It is never allowed where the newly discovered evidence goes to impeach a witness. (*Bunn* v. *Hoyt*, 3 John. Rep. 255. *Duryee* v. *Dennison*, 5 id. 248. *Shumway* v. *Fowler*, 4 id. 425. *Halsey* v. *Watson*, 1 Caines' Rep. 24, 5.) *Shumway* v. *Fowler* was this very case.

Another decisive objection to the newly discovered testimony is, that it is cumulative.

The affidavits of the jurors are clearly not receivable. (*Dana* v. *Tucker*, 4 John. Rep. 487.) In no case can a verdict stand, if the party be allowed to go round to the jnry, and fish out of a few of them, some strange reason for their finding.

But it was proper to allow damages for bringing up the child. It being born out of the state, the overseers and justices of Butternuts, or any other town in this state, could give no relief.

*Oakley*, in reply. The general rule may be as stated by the plaintiff's counsel, that where the defect appears of record, the remedy is by motion in arrest; and not for a new trial. But it cannot apply where the point is reserved by the Judge, and spread upon a case. Beside, will not the Court give a new trial, when they see in any form, that neither by the declaration, nor the proof in its support, can the plaintiff ever be entitled to recover?

All the cases, and especially *Nickleson* v. *Stryker*, cited on the other side, are explicit, that, to entitle the plaintiff to this action, there must be a present right of service in him; that the relation of master and servant must exist, either actually or constructively, at the time of the seduction. Where

the child is apprenticed, no right of this kind exists in any but the master named as such in the indentures. *Martin* v. *Payne* goes upon the present right of service. It admits that the want of this right would deprive the parent of the action. The illustration put there, of a daughter at a boarding school, most powerfully enforces this very distinction. The daughter here was the servant, both *de jure* and *de facto*, of P. F. Whether of full age is not the criterion. Age is looked to only to decide the constructive relation. Although the daughter be under age, the relation of servant to her parent ceases when the truth was known, that she is the indented servant of another. If the master himself commit the injury, the law would dissolve the indentures, and then the right of action would arise. That case makes nothing in favor of a claim against a third person.

I had always supposed that where a plaintiff brings an action on the case, he must make out his *whole* case. It is the *act* of the defendant which makes him liable; the *seduction*. Expenditure, loss of service, disgrace, &c., are mere items of damage, mere consequences resulting to the mother, while the *case* remains with P. F. There are various instances of this, and the like actions, by one standing *in loco parentis*. *Edmonson* v. *Machell*, (2 T. R. 4,) was one where the question came up on the rule of damages to be adopted in reference to that relation. But whenever the question has arisen upon the right of action, it has always been put upon the relation of master and servant existing at the time.

[*Foot* here mentioned the case of words not slanderous of themselves; but resulting in loss to the party of whom they are spoken. He said the statute of limitations ran in such a case only from the time when the damage arose; not from the time of speaking the words. This had been holden of a loss of marriage by speaking words.]

*Oakley.* In the case put, there is no *act* which, *per se*, would make the party liable at all. The special damage alone is the cause. But follow the illustration from the doctrine of slander. Suppose one to hold a particular charac-

ALBANY, Oct. 1825.

Sargent v.

ter or relation, which alone enables the slander to affect him, but which he abandons before action ; could he yet sue for the words ? I should suppose not.

The new evidence upon which we move, goes to disprove the main fact in the cause, by proving another directly inconsistent with it. The defendant, conscious of no connection whatever with this female, who pretends she was seduced by him, could not fix upon any time when he was out of the county of Otsego, as the one which she would take for the time of the offence. Nor is the evidence cumulative. The fact of an *alibi* was not set up, or attempted to be proved on the trial.

Courts will always interfere where the jury have mistaken the law. True, they generally examine into this on the case made ; but where it appears equally plain in any other way, the same result should follow. The argument upon this point is a mere dispute about form.

SUTHERLAND, J.   This is an application for a new trial on the following grounds :

1. That the action cannot be sustained by the mother, (the present plaintiff ) at all, because the daughter, at the time when the alleged injury was committed, was an indented apprentice, and in the actual service of her master ; and the subsequent cancelling of the indentures could not transfer the right of action, which previously belonged to the master, to the mother.

2. That the verdict is against the weight of evidence ; and

3. That the damages are excessive.

A new trial is also moved for on the ground of newly dis covered evidence, which will be subsequently considered.

Whether the declaration discloses a good cause of action in favor of the present plaintiff or not, is a question which cannot arise upon this motion. If it does not disclose a good cause of action, it is apparent upon the record, and must be taken advantage of by motion in arrest of judgment. This ground of objection is founded upon the alleged error of the Judge who tried the cause, in refusing to nonsuit the plain tiff. But the Judge at the trial was only authorized to try

the issues of fact between the parties ; and was not to de-cide upon the pleadings, or whether the facts set forth in the declaration, if true, would, or would not entitle the plaintiff to judgment on the coming in of the *postea*. ( *Ward* v. *Center*, 3 John. 271. *Smith* v. *Elder*, 3 John. 113. *Van Vechten* v. *Graves*, 4 John. 406. *Meyer* v. *M'Lean*, 1 John. 509.)

But it may be desirable to the parties, to have the opinion of the Court expressed upon the point, whether the present plaintiff can sustain this action ; as that question will undoubtedly arise, and be regularly brought before the Court, in the event of a new trial being granted, upon any of the grounds on which it is now asked.

In *Martin* v. *Payne*, (9 John. 387,) the daughter, at the time of her seduction, resided in the family of her uncle, with the consent of her father, and worked for her uncle when she pleased, for which he agreed to pay her ; but there was no agreement for her continuance with him, for any definite time. Previous to her seduction, she had no expectation of returning to her father's house to reside ; yet, being under age, and having returned immediately after her seduction, and he having supported her and borne all the expenses incident to her confinement, it was held that he was entitled to an action on the case against her seducer, for debauching her, *per quod servitium amisit*. Spencer, J. in delivering the opinion of the Court, says, " in the present case, the father had made no contract for hiring out his daughter, and the relation of master and servant did exist, from the legal control he had over her services ; and although she had no intention of returning, that did not terminate the relation, because her volition could not affect his right." And he remarks that the case of *Dean* v. *Peel*, (5 East, 49,) is the only one in which the right of the father, to maintain an action for debauching his daughter, *whilst under age*, has ever been denied ; and that he considered it a departure from all former decisions upon the subject. Where the daughter is over twenty-one years of age, and *in the service of another*, the action is not maintainable. (3 Burr. 1878.) She must, when of age, be in her father's

service, so as to constitute in law and in fact the relation of master and servant, in order to entitle the father to maintain an action for debauching her. (*Nicholson* v. *Stryker* 19 John. 117.)

It must be conceded, that if the indentures of apprentice ship had not been cancelled, or voluntarily rescinded by the parties, the mother could not have maintained this suit. It is not founded upon the relation of parent and child, but of master and servant; and where the latter relation does not exist, either in fact or in judgment of law, no loss of service can be alleged or proved, without which an action on the case for seduction cannot be sustained. The apprentice, by suffering herself to be debauched, and thereby rendered incapable of performing her part of the indentures, virtually abrogated them, by putting it in the power of the master to have them dissolved and discharged at his pleasure. It is expressly provided, by the 11th section of the act concerning apprentices and servants, (1 R. L. 139,) that it shall be lawful for three justices, &c. upon application or complaint made upon oath, by any master or mistress, against any apprentice or servant, touching or concerning any misdemeanor, miscarriage or ill behavior, &c. to hear, examine and determine the same; and to punish the offender by commitment, &c. or otherwise, by discharging such apprentice or servant, by warrant or certificate under their hands and seals, &c. That the offence in this case is one for which the apprentice or servant would have been discharged, there can be no doubt. And it is equally clear, that the parties had a right voluntarily to abandon a contract, which would have been cancelled upon application to the competent authorities. I consider the indentures therefore, as legally cancelled from the 18th of August, 1821 when, by the mutual consent of the parties, they were given up. She then returned to the house of her mother, and from that period, at least, the relation of mistress and servant was restored between them.

In an action of trespass on the case, for an injury like this, the real cause of action is the expenditure of money, and the loss of service consequent upon the seduction. Hence the

action cannot be sustained for seduction, unless it is follow-
ed by pregnancy, or the loss of health, and consequently
of service. (3 Bl. Com. 142, note (13.) The *per quod* is
the gist of the action. But trespass may be maintained,
where the defendant illegally enters the father's house;
and debauching his daughter may be stated and proved
as an aggravation of the trespass, although it may not have
been followed by the consequences of pregnancy.

Where the action is trespass, whether it be followed by
pregnancy or not, the *illegal entry* is considered the gist
of the action, and the loss of service, &c. merely as conse-
quential. If the trespass, therefore, be not proved, the plain-
tiff cannot, in such case, recover. (2 Ld. Raym. 1032.
*Bennett* v. *Allcott*, 2 T. R. 168, per Buller, J. 3 Bl. Com.
143, note (13.) (*a*)

It would seem, according to these principles, not to be
material who was entitled to the services of the female, at
the time of the seduction, when the action is case. But the
real inquiry is, upon whom has the consequential injury
fallen; the expense attending her confinement, and the
loss of her services?

Suppose a daughter hired out by her parent for a month,
or six months, and debauched during her service; but the
fact not known, nor the consequences of it apparent, until
after the expiration of her term of service, and her return
to her father's house: is there no remedy in such a case?
If there is, it must belong to the parent. For if the circum-
stances of the case would support *trespass* in the name of
the master, the recovery would be nominal merely, as he
could not aver or prove the consequential injury by way of
aggravation. Or suppose the case put by counsel upon
the argument, that an indented, or hired servant, is de-
bauched by her master; has the parent no redress? The
supposition is not to be endured. It cannot, therefore, be
necessary, according to the theory, or just principles by
which this action is regulated, that the parent, in order to
sustain it, should be entitled to the services of the daugh-
ter, at the very instant when the act is committed, which
subsequently results in a loss of service, or necessary pe-

Margin notes:

ALBANY,
Oct 1825.

Sargent
v.

(*a*) And vid.
ante, 4 Cow-
en's Rep. 414.

cuniary disbursements. The latter circumstances consti-
tute the real gravamen; and if that fall upon the parent,
it entitles him to the legal redress. In *Browne* v. *Gibbons*,
(1 Salk. 206,) it is said, if a man bring trespass for beat-
ing his servant, *per quod servitium amisit*, it is not an ac-
tion of assault and battery, within the statute, of 22 and
23 Car. 2, but is an action founded on the special damage.
So in slander, where the words are not actionable in them-
selves, and special damage is alleged, that is considered
the cause of action for some purposes. (Cro. Car. 141, 163,
307.)

The very act of prostitution may be considered an abro-
gation of the contract or indentures of service, at the elec-
tion of the master; and when he makes his election, as ta-
king effect by relation, from the time when the act was com-
mitted.

I am, therefore, very clearly of opinion, that the parent,
in this case, can sustain the action.

There is no ground for interfering with the verdict as
being against the weight of evidence, upon the fact of se-
duction. It was positively and circumstantially sworn to
by the daughter; and although, as to some of the particu-
lars, she was contradicted by Miss Edson, and her veracity
may be considered as impeached by other witnesses, still
the jury believed her; and it was their peculiar province
to decide upon the credibility of conflicting witnesses. Un-
der such circumstances, particularly in actions of this na-
ture, the Court never disturb the finding of a jury. (3 John.
182, 282. 8 John. 370. 15 John. 496.)

Nor do I think we are authorized to interfere on the
ground of the excessiveness of the damages, although they
appear to us much larger than they should have been.
There were no aggravating circumstances in the case; no
arts of seduction were used, for none were necessary. The
character of the daughter had long been considered loose
and abandoned. There were no wounded feelings, or blas-
ted reputation to aggravate the moral impropriety of the de-
fendant's conduct, and to call for exemplary damages. We
should have been better satisfied with a verdict, barely suf-

ficient to remunerate the plaintiff for her actual loss. But the damages are not so flagrantly outrageous and extravagant, as necessarily to evince intemperance, passion, partiality or corruption on the part of the jury; and where that is not the case, the Court will not undertake to set their judgment on a question of damages, in an action of this nature, in opposition to the judgment of the jury. It is the judgment of the jury, and not of the Court, which is to determine the damages in actions for personal injuries. (*Coleman* v. *Southwick*, 9 John. 51. *M'Connell* v. *Hampton*, 12 John. 235, 6. 10 John. 446.) In *Duberly* v. *Gunning*, (4 T. R. 651,) which was an action for criminal conversation, the evidence showed that the husband had been guilty of gross negligence and inattention to the conduct of his wife, with respect to the defendant. That he had suffered many indecent familiarities between them in his presence, while he was engaged in similar conduct with another woman; and Ld. Kenyon charged the jury, that these circumstances, if they did not entirely take away the ground of action, went very far in mitigation of damages. The jury, notwithstanding the charge, found a verdict for the plaintiff for £5000. Upon a motion for a new trial, on the ground of the excessiveness of the damages, Ld. Kenyon admitted that the damages were much larger than they ought to have been, and that he should have been satisfied with nominal damages; but he observed he had known instances of much greater damages given in that kind of cases, which were never got rid of by granting new trials; that he had never known an instance in which a new trial had been granted, in such a case, upon the ground of excessive damages; and although he felt great difficulties on the one side as well as the other, he had not courage enough to make the first precedent of granting a new trial under such circumstances. Mr. Justice Buller was of opinion, in that case, that the defendant was entitled to a verdict; that the conduct of the husband was such as to authorize the conclusion of his consent to the prostitution of his wife. He was for granting a new trial; yet the other Judges agreed with Lord

Kenyon, that even in such a case, they were not authorized to set aside the verdect.

The present action is of the same nature and character, as an action for criminal conversation, which Spencer, J. in *M'Connell* v. *Hampton*, (12 John. 237,) considered as exempted by peculiar considerations from the interference of the Court on the ground of excessive damages. I have found no case in which a verdict, in such an action, has been set aside on such grounds. I am very far from saying that the Court would, in no case, interfere in such an action, on account of the enormity of the damages; but the case must be of a very peculiar and extraordinary character, to justify their interference. (*Hewlet* v. *Cruchley*, 5 Taunt. 277. *Irwin* v. *Dearman*, 11 East, 22. 2 Archb. Pr. 222, and cases there cited. *Hutcheson* v. *Peck*, 5 John. 207, per Van Ness, J.) The verdict in this case is by no means as excessive and enormous, as in the case of *Duberly* v. *Gunning*.

Upon the case, therefore, I think the motion for a new trial must be denied.

But upon the ground of mistake in the jury, as to the principles upon which their verdict was made up, and also of the newly discovered evidence, I am inclined to think a new trial should be granted.

Two of the jurors swear, that the jury, their fellows, as well as themselves, came immediately to the conclusion that the plaintiff was entitled to nothing but her actual expenses, and the loss of her daughter's service during her confinement; and that it was clearly proved, that she had been very profligate and corrupt before the defendant knew her; that they estimated the actual expense at $20, and gave the $900 to pay the expense of maintaining, supporting and bringing up the child, till it was of sufficient age to maintain itself; and, in that way, the jury gave a verdict for the plaintiff, for $920; that the jurors supposed it was proper to give enough to bring up and educate the child, as the plaintiff's counsel, in addressing the jury, expressly claimed a right to recover on that principle, which was not denied by the Judge in his charge; nor did he notice or comment on it at all.

The plaintiff has produced no affidavit from any of the other jurors, denying this statement. It then stands admitted not that one or two jurors estimated the damages on that principle; but that it was an error common to all the jury, resulting from what they considered the implied assent of the Judge, to the correctness of the rule of damages as claimed by the counsel for the plaintiff. This is, in effect, equivalent to a misdirection of the Judge. It is clearly the duty of the Court to interfere in such cases, if the facts come properly before them. The plaintiff is under no legal obligation to support and educate the child; nor can she be compelled to appropriate the proceeds of this verdict to that purpose; nor will it afford the defendant any exemption from his liability to provide for the child, when called upon in the regular and due course of law.

I must confess that, upon the argument, I was strongly inclined to think the affidavits of the jurors were inadmissible; but, upon looking into the cases, I have come to a different conclusion:

In *Dana* v. *Tucker*, (4 John. 488,) the court say, the better opinion is, that the affidavits of jurors are not to be received to impeach a verdict; but that they may be admitted in exculpation of the jurors, and in support of their verdict. The affidavit disclosed that the jurors settled the amount of the verdict by each marking down such sum as he thought ought to be allowed, and dividing the aggregate amount by twelve. This case overrules that of *Smith* v. *Cheetham*, (3 Caines, 57,) in which similar affidavits were held admissible by Spencer and Livingston, Justices. Ch. J. Kent dissenting. The decision in *Dana* v. *Tucker* is undoubtedly in accordance with the latest authorities in England. (*Owen* v. *Warburton*, 4 B. & P. 329. Tidd. Prac. 817, and the cases there cited. 1 T. R. 11.) The English courts have also refused to receive the affidavits of jurors to explain the grounds of their verdict, and show that they intended something different from what they found. (5 Burr. 2657. 2 Bl. Rep. 803. 2 T. R. 281. 1 Burr. 383. Tidd. Prac. 817, *contra.*)

I think the affidavits may be received here, without impeaching the principle of either class of those cases.

They are not introduced to show any impropriety in the conduct of the jurors, or that the verdict is not such as they intended ; but to show a misconception of the rule of damages, as derived from the charge of the Judge, taken in connection with the argument of counsel. It was natural for the jury to infer from the silence of the Judge upon this point, (which was the most important, and indeed the only point of any difficulty in the case,) his assent to the correctness of the rule of damages, as laid down by the counsel. They acted upon that supposition. Their error was one into which they were led by the Court. It was in the nature of a misdirection. The fact that they were so misled, can be derived from no other source than the jurors themselves. If the judge had *expressed* the opinion which the jurors understood him to entertain, the verdict would have been set aside for a misdirection. I repeat, that the affidavits *impute no impropriety* of conduct to the jurors, *nor do they contradict the verdict as recorded.* In such a case I find no authority against receiving them ; and I am inclined to the opinion, though not without some hesitation, that, un der the circumstances of this case, they may be safely ad mitted; and that the defendant, on that ground, is entitled to a new trial, as also on the ground of the newly discovered evidence.

The defendant was guilty of no laches in not being prepared to prove on the trial, that he was not in the town of Butternuts on the day when the witness swore she became pregnant by him. Upon the supposition that he never had connection with the witness, and that her whole story is a fabrication ; still, knowing that he was in the neighborhood about the time when, according to the birth of the child, it must have been begotten, he could not have anticipated that she would allege the connection to have taken place at a period subsequent to his leaving the neighborhood ; and consequently was not, in the exercise of ordinary diligence and discretion, bound to be prepared to show when he did leave it.

Nor is the effect of the testimony merely to impeach the witness. It establishes a fact which, (if the witness is to be understood as swearing that her pregnancy took place on Wednesday, the 13th of June,) shows conclusively that the

defendant could not have been the father of the child. It does not contradict her in an incidental circumstance, the only effect of which is to diminish the credit to which she is entitled when she speaks to the main fact in the cause, without having any direct bearing on that fact, as in *Shumway* v. *Fowler*, (4 John. 425,) and *Duryee* v. *Dennison*, (5 John. 249) and the cases there cited: but it disproves, or has a direct tendency to disprove, the existence of the main fact itself. It is, in truth, proof of an *alibi*, which I apprehend has never been considered as merely impeaching a witness.

I am, therefore, on these grounds, for granting a new trial.

New trial granted.

ALBANY,
Oct. 1825.