FREDERICK ZOPFI RESPONDENT, v. THOMAS K. SMITH, APPELLANT.

*Evidence — admissibility of collateral circumstances, as showing the motive of a charge of seduction and affecting the credibility of the witness — delay in disclosing the fact of improper intercourse.*

In an action to recover damages sustained by reason of the seduction of the plaintiff's daughter by the defendant, in whose employment the daughter was, it appeared that no pregnancy followed, no sickness which required a physician, and no loss of time occurred, nor was the plaintiff subjected to any expense by reason of the alleged wrongful acts of the defendant; that the

plaintiff's daughter left the house of the defendant, and the next day commenced service in the employment of another person from whom she received the same or greater compensation than she had been receiving from the defendant; that the plaintiff, having made a claim against the defendant for his daughter's services the defendant claimed a reduction therefrom for certain articles broken by the daughter, and for certain things which it was alleged that she had in her possession belonging to the defendant's wife and daughter. This claim on the part of the defendant was communicated to the daughter, who had made no disclosures prior thereto of the alleged wrongful acts of the defendant. When informed that she had been charged with stealing things at the defendant's she spoke to her mother of the alleged intercourse between herself and the defendant.

Upon the trial of the action the defendant's counsel asked the daughter the following question: "Let me ask you in regard to the things which you say your father told you you was charged with stealing; did you have some of their things in your trunk? A. No, sir;" and thereupon the court observed: "I won't try that question in this case;" to which an exception was taken by the defendant.

*Held*, that this ruling was error, as a full disclosure of all the circumstances pertaining to these matters should have been permitted.

That if the daughter had been guilty of the offense of stealing, proof thereof would probably impair her testimony and might have affected her standing before the jury as a witness.

That, as it appeared by her own testimony that she did not make known to her parents the charge against the defendant until after she had learned that she was accused of taking things from the defendant or his family, it was proper that all the circumstances should have been presented to the jury that they might the more accurately judge of her credibility as a witness.

In an action for seduction the omission to make a prompt disclosure of the improper intercourse militates strongly against the testimony of the female.

APPEAL by the defendant from a judgment entered, in favor of the plaintiff, in the office of the clerk of the county of Onondaga on the 29th day of January, 1889, for the sum of $400 damages, besides costs; and also from an order, entered in said clerk's office on the 24th day of January, 1889, denying defendant's motion for a new trial on the minutes.

The action was tried before the court and a jury at the Onondaga Circuit, and a verdict was rendered in favor of the plaintiff for the sum of $400.

The action was brought to recover damages for loss of services of plaintiff's daughter Sybil by reason of her seduction by the defendant.

Defendant's answer admits that Sybil Zopfi was the servant and infant daughter of the plaintiff.

*Drummond & Nellis,* for the appellant.

*George Barrow,* for the respondent.

HARDIN, P. J.:

Sybil was fourteen years of age in February, 1886, and on the 5th of September, 1886, she was hired by the plaintiff as a domestic to the defendant, and entered into his service as such domestic in his family upon his farm in the town of Sennett, Cayuga county, where she remained in service until the 10th day of July, 1887. In her testimony she states that the defendant had sexual intercourse with her in April, 1887, about the twenty-second day, and on several other occasions at the residence of the defendant. The defendant was a married man, having a wife and daughter and five sons, and the wife of the defendant was at home on most, if not all, of the occasions referred to by Sybil when the intercourse took place. No pregnancy followed; no sickness which required a physician, and no loss of time occurred, nor was the plaintiff subjected to any expense by reason of the alleged wrongful acts of the defendant. From the house of the defendant she was taken by her father on the 10th of July, 1887, and the next day she commenced service in the employ of Van Camp, where she was to receive the same or greater compensation than she had been receiving at the hand of the defendant. When she left the defendant's employment there was no settlement had for her wages, and in November, 1887, the plaintiff lodged with Mr. Milford, an attorney at Skaneateles, a claim for the balance of Sybil's services; and when the defendant was called upon by the attorney to adjust the same, he claimed a reduction for certain articles broken by Sybil, and for certain things it was alleged she had in her possession belonging to defendant's wife and daughter. The attorney communicated to the plaintiff the claim for reduction made by the defendant, and he communicated the same to the daughter Sybil. She had made no disclosure to her parents prior to learning of the claims made by the defendant for an offset to her father's demand for her wages. Sybil testifies, viz.: " I first told my mother in 1888; not until then; I guess it must have been about in October; about October, 1888; I had not told my father then about it ; my mother told my father; before I told my mother in 1888 I had

not learned that I had been accused of doing some wrong things at Mr. Smith's; not till one time I went home when my father told me about it, and I told him it was no such thing; that, I guess, must have been in October, 1888; I don't remember whether it was about the time I told my mother; I told my mother; I think that my father told first that I was charged with doing something wrong at Mr. Smith's before I told my mother; I did not tell my father or mother of what had happened at Mr. Smith's until they told me; my father told me that they charged me with stealing things at Mr. Smith's; I was then at our house; I was not then living at Mr. Van Camp's; I was at home on a visit; I was working at Mr. Van Camp's; *I told it the same day he told me I was charged with stealing; I did not tell my father; I told my mother; it was the same day that my father told me that I was charged with stealing.*" Sybil was in the habit of visiting her parents while she was in the service of Smith about as often as once a month. After Sybil had been cross-examined in respect to the circumstances of the alleged intercourse, the counsel for the defendant propounded to her the following question, viz.: " Let me ask you in regard to the things which you say your father told you you was charged with stealing. Did you have some of their things in your trunk?" " A. No sir." Thereupon the court observed: " I won't try that question in this case. " And thereupon the plaintiff's counsel said, viz.: " I am willing to have it tried here if they want to;" thereupon the court remarked " I am not willing to try it," and exceptions were taken for the defendant. The observations and ruling of the court prevented the defendant from fully cross-examining Sybil in respect to the things which she was charged with taking from the wife and daughter of the defendant. While she was allowed to state that she did not have any of those things in her trunk, a full development of all the circumstances pertaining to those things was not permitted. If she had taken things from the defendant's wife and daughter, as the question implied, she had been guilty of an offense which would have, if developed, probably impaired her testimony and might have affected her standing before the jury as a witness. Inasmuch as it appeared by her testimony that she had not made this grave charge against the defendant known to her parents until after she learned that she was accused of taking things from the defendant or his

family, it was quite important that all the circumstances relating to such things should have been given in the presence of the jury that they might the more accurately judge of her credibility as a witness. We think, under the circumstances, that the learned trial judge too quickly shut down the gate, and cut off the defendant's opportunity to develop all the facts and circumstances relating to the things which the defendant had charged her with having taken from his family. We think this is a case where we ought not to assume that the defendant was not prejudiced by the ruling. The issue which was finally submitted to the jury was a very important one to the plaintiff and his family and defendant and his family. There was little or no direct evidence bearing upon the issue, except such as was given in behalf of the plaintiff by Sybil, and the testimony of the defendant, who stoutly and stubbornly disputed the allegation made against him by Sybil. If she was treated by the defendant in the manner in which she has testified upon the trial of this action, it is very strange that she did not disclose the treatment to her parents long before she was accused of taking things from the wife and daughter of the defendant. According to her own story, she allowed eighteen months to elapse between the time of the first intercourse and the disclosure thereof to her parents. We have not overlooked the circumstance, that she claims to have made some disclosure to her sisters at an earlier period ; although if she did, it is very strange that they did not communicate the fact to the parents.

In dealing with the long delay to disclose such treatment, courts have frequently observed that the omission to make prompt disclosure militates largely against the credibility of the testimony of a female. In *People* v. *O'Sullivan* (104 N. Y., 486), the court says : "The outrage in such a case upon a virtuous female is so great that there is a natural presumption that at the first suitable opportunity she would make disclosure of it; and she would be so far discredited if she did not make the disclosure for the purpose of confirming her evidence. Where she is a witness, such disclosure may be received. But where the disclosure is not recent, as soon as suitable opportunity is furnished, the reason for receiving it in evidence does not exist, and the principle justifying its reception does not apply. In 1 Hale's Pleas of the Crown (632), it is said that the ' complainant must make fresh discovery and pursuit of the offense and offender, otherwise it

carries a presumption that her suit is but malicious and feigned.' In 1 East's Pleas of the Crown (445), it is said that the evidence of the complainant 'is confirmed if she presently discovered the offense and made pursuit for the offender,' and that 'her evidence is discredited if she concealed the injury for any considerable time after she had opportunity to complain;' and the same language is substantially embodied in 4 Blackstone's Commentaries (214)."

As we have already seen, Sybil had ample opportunity to make disclosure to her parents, and her delay to make the same for eighteen months militates very strongly against her testimony; the circumstance that she makes the disclosure after being charged with taking things from the family of the defendant, is calculated to give rise to a distrust of her testimony in respect to the charges she makes against the defendant. And while we are, not prepared to say that, whether or not she should be believed, was not a question within the province of the jury, even after the contradiction of her testimony by the defendant (*Sargent* v. ———, 5 Cow., 106), we are prepared to say that there should have been a full and exhaustive examination of her upon the subject of the taking of things from the family of the defendant before the jury should have been allowed to weigh and believe her testimony against the evidence contradicting the same given by the defendant, upon the serious and important issue presented in this case.

The learned trial judge regarded the issue as a grave one between the parties, and he stated in his instruction to the jury as follows: " You are to determine whether a man, occupying the position of the defendant in this case, with a family of children about him, his own daughter appearing here upon the stand of about the age of Sybil, as a witness in his behalf; whether a man with these domestic jewels in his household, would be likely to have rifled her of the only one that was valuable to his servant then in his employ. I say, gentlemen, it is for you to determine which of these people tell the truth; and as you shall determine that matter, by your verdict announce the judgment that you shall reach."

After a careful consideration of all the salient features of this case, as presented by the evidence on either side, we are constrained to say that the ruling to which we have adverted may have been

very prejudicial to the defendant, we, therefore, think it our duty to award a new trial.

MARTIN and MERWIN, JJ., concurred.

Judgment and order reversed on the exceptions and a new trial ordered, with costs to abide event.