DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS

### DURING THE YEARS 1905 AND 1906.

---

### Carl K. Palmer v. Charles Baum.

1. CARNAL ASSAULT—*what does not justify.* Conduct upon the part of the person claiming to have been carnally assaulted, short of a consent, is not justification therefor.

2. LOSS OF SERVICES—*father may recover for.* A father may recover for loss of services of an adult daughter who though married was separated from her husband and a member of such father's family, where such loss of services was the result of an illegal carnal assault.

3. DECLARATION—*legal name not necessary to be alleged.* The legal name of a person need not be alleged in a declaration; it is sufficient if that name by which the person is known and which has been adopted by such person is employed.

4. MEASURE OF DAMAGES—*what not element of, in action for loss of services.* Money expended in the support of the child resulting from an illegal carnal assault is not a proper element of damage which could be recovered by the father of the victim of such assault.

5. MEASURE OF DAMAGES—*what element of, in action for loss of services resulting to the father from an illegal carnal assault upon his daughter.* In such an action damages for disgrace and humiliation suffered by such father and his family may be recovered.

6. PUNITIVE DAMAGES—*when improper in action for carnal assault.* In such an action punitive damages should not be allowed where it appeared that there was no excessive viciousness, deliberate malice, brutality or other special element tending to aggravate the offense committed and where such offense appears from the evidence to have been almost a matter of invitation.

Action in trespass. Appeal from the Circuit Court of Vermilion County; the Hon. MORTON W. THOMPSON, Judge, presiding. Heard in

this court at the May term, 1905. Reversed and remanded. Opinion filed December 22, 1905.

REARICK & MEEKS and J. B. MANN, for appellant.

BUCKINGHAM & DYSERT, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in trespass by appellee against appellant. The declaration alleges that the defendant, with force and arms, wilfully and maliciously assaulted, debauched and carnally knew Ercel Baum, the daughter and servant of plaintiff, who was residing with plaintiff and was a member of his household, by reason of which she became pregnant and was delivered of a child, whereby plaintiff lost her services and was obliged to expend $500 for nursing, etc., and $200 for the support of said child. A trial by jury resulted in a verdict in favor of appellee for $5,700, of which, upon motion for a new trial, he remitted $2,200. The trial court thereupon rendered judgment for $3,500, to reverse which he appealed.

The material facts involved, briefly stated, are as follows: Appellee is a traveling salesman, residing in Danville, Illinois. His family consists of his wife, four daughters and two sons. One of his daughters, Ercel, aged twenty-six years, was, prior to the autumn of 1903, a member of his family, and performed various services about the household. A portion of this time she was employed as a clerk in a dry goods store.

During the year 1902, Ercel made a visit to Washington, D. C.; while there she was married to one Adolph Fera. After the ceremony, for reasons not appearing in the evidence, the parties immediately separated without having consummated their marriage. Ercel returned to the home of her father and became and continued to be a member of the family. She did not, however, disclose the fact of her marriage to her family, and it was not known to appellant, nor the public generally. After her return to Danville, appellant, who had formerly paid her attention, continued to

do so, and from time to time called upon her, and accompanied her to social functions. In May, 1904, she gave birth to a child which the proof shows was begotten by appellant, upon the evening of August 7, 1903, at a "Country Club" in the suburbs of Danville. The testimony of both parties as to what there occurred, is in substantial accord.

They had been drinking intoxicating drinks known as "high balls" and were sitting in a hammock together engaged in what she termed "spooning." Their legs were crossed and their sexual organs in close contact. She testifies that while so engaged and in such position, appellant with force and against her will and over her resistance, effected a partial penetration of her person, but that she did not at the time believe that a complete act of intercourse had taken place. Appellant testifies that he may have had intercourse with her, but that if he did "he didn't know it." In the following November, Ercel consulted a physician who, upon examination, discovered that notwithstanding her hymen was intact—a condition which he testifies indicated that she had not been fully penetrated—she was pregnant.

Counsel for appellant seem to assume that the action at bar is based upon an alleged seduction and seek to argue the questions involved upon that theory. There is no proof in the record to show that appellant employed any fraud, promise, flattery, deception, or the like, to induce the woman to consent to sexual intercourse, or to overcome resistance on her part; nor that he induced her to partake of the liquor by which her passions were undoubtedly inflamed; nor that he exercised fraud or persuasion to induce her to permit him to place and continue his organ in contact with hers. On the contrary the evidence tends to show that her impregnation was brought about by appellant's desire to gratify his lustful passions, aggravated as they must have been, by the voluntary lascivious acts of the woman, and that she of her own free will and without protest placed herself in such position that the act which followed became not only possible but exceedingly probable.

Palmer v. Baum.

In fact it may fairly be inferred from the facts and circumstances as detailed by both parties, that a mutual desire for sexual intercourse was present in both, and that they were only restrained from gratifying the same by the fear of her impregnation and its consequences. It follows that no seduction of the woman was proved and none in fact is charged in the declaration, the action being in form trespass, *vi et armis*.

It is first urged that the verdict is not supported by the evidence. In view of the foregoing facts and circumstances which appear from the practically uncontroverted testimony of the daughter, we are impelled to hold that the material allegations of the declaration were sufficiently established to warrant a recovery thereunder. The penetration of the person of the woman without her consent, although no considerable force is shown to have been exercised, amounted in law to an assault. Such assault being clearly unlawful, force may be implied. The mere fact that the woman may have permitted appellant to, and did herself, indulge in such lascivious conduct as to almost amount to an invitation to him to do as he did, did not, in law, authorize or license him to penetrate her person without her knowledge or consent.

That an action in trespass, *vi et armis*, will lie for assaulting and debauching an adult daughter or servant, by means whereof the master or parent is injured, seems to be well settled. While the action of trespass is technically one of assault and battery the gist of the action, as an ordinary seduction, is the loss of service. If the person debauched be an adult, it must be shown that she resided with and rendered service for the plaintiff. These facts appear in the case at bar. Although the services rendered were but slight they were sufficient to establish the relation of master and servant between appellee and his daughter. Every fact necessary to maintain the action was thus alleged and proved. It is immaterial upon the question as to the extent of the plaintiff's injury, whether the injury to plaintiff was produced by seduction without force or by assault.

The wrong inflicted is no less bitter if produced by the one means than by the other. In either case the real *gravamen* of the action is the mortification and disgrace of the family and the wounded feelings of the plaintiff. The fact that less force was employed than that required by law to constitute the crime of rape, is therefore also immaterial. If the virtue of the daughter was overcome by force, the injury to the parent is at least as great as if there had been a seduction.

It is next urged that the court erred in overruling appellant's motion to exclude the testimony of appellee on the ground, that, while in the declaration the daughter of appellee is described as Ercel Baum, the proof shows that by reason of her marriage her true and legal name was Ercel Fera. The evidence shows that notwithstanding her marriage plaintiff's daughter was thereafter generally known as Ercel Baum and that she never assumed or was known by any other name. There is no question as to her identity. She had the right to cause herself to be known by any name she chose. One's name is merely *descriptio personae* (14 Am. Eng. Ency. Pl. & Pr. 293). The motion was properly overruled.

It is further contended that the court should, upon appellee's motion, have directed a verdict for the defendant for the reason that her husband had the exclusive right to sue for her seduction, notwithstanding she was a member of her father's family and not living with her husband. The court did not err in this respect. It has been held, and we are cited to no case to the contrary, that where a married woman had separated from her husband and lived with her father and acted as his servant, the latter might maintain an action of trespass against a person by whom she was assaulted and debauched and had a child.

In the case of Harper v. Luffkin, 7 Barn & Cres. 387, it appeared that the plaintiff's daughter had been married eight years, had two children, and had for five years been separated from her husband, who never during that period had any access to her. After this separation she returned

Palmer v. Baum.

to her father's house and lived with him acting as his serv-
ant. During such residence with her father she became
acquainted with defendant, and had a child by him. For
the defendant, it was contended, that the relation of mas-
ter and servant could not, under such circumstances, exist
between plaintiff and his daughter. The defendant entered
a motion for a non-suit upon the ground that, inasmuch as
the action was founded upon the loss of the daughter's
service and the husband had not consented to his wife
becoming the servant of her father, and might at any time
reclaim her, the relation of master and servant could not
exist between the plaintiff and his daughter, and that
therefore the very ground of the action failed. In overrul-
ing the motion the court said: "This motion depends upon
the question, whether the plaintiff's daughter could, under
the circumstances which appeared in evidence, be considered
as his servant. It was not disputed that she performed
various acts of service, but it is said that a married woman
living apart from her husband, could not make a contract
of service. In many instances, married women are in fact
hired as servants. Such contracts are no doubt liable to
be defeated at the will of the husband. He may put an
end to that relation of master and servant, but unless he
interferes, it by no means follows that such relation may
not exist, especially as against third persons who are
wrong-doers. It appears to me that such relations might,
and did, in fact, exist in this case, and that in the absence
of any interference by the husband, it is not competent to
the defendant to set up his rights as an answer to the
action."

It is not controverted that appellee, if entitled to at all,
should recover for the loss of the services of his daughter
and the actual and necessary expenses incurred as the direct
result of her confinement. The trial court however, by
improperly modifying one of the instructions offered by
appellant, and by permitting evidence to go to the jury as
to the amount expended by appellee in rearing the child up
to the time of the trial, inferentially told the jury that such

expenditures were proper to be considered by them in assessing damages.

This was clearly error as appellee was under no legal obligation to support the child, and if he voluntarily assumed that burden he cannot hold appellant liable therefor. Sargent v. ——————, 5 Cow. 106; Hitchman v. Whitney, 9 Hun, 512.

There can be no doubt, we think, that appellee is entitled to recover damages for the disgrace and humiliation suffered by himself and family as the result of the debauchment of his daughter. He and they were so closely and intimately connected with her by kinship, blood and direct association as to be capable of receiving such injury. She had fully resumed her relation with the family and was known to the world as a member thereof.

The right of the jury to assess damages for disgrace and humiliation in actions for seduction, is not confined to cases where the plaintiff makes title through the parental relation. Such damages may also be given when the required relation of master and servant is established by contract. The true rule is that the plaintiff's right to the services may be made out in either way, and that when established so that the action is technically maintained, the court and jury are to consider whether the plaintiff on the record is so connected with the party seduced as to be capable of receiving injury through his dishonor. Lipe v. Eisenlerd, 32 N. Y. 229; Badgley v. Decker, 44 Barb. 577.

The extent of the disgrace and humiliation suffered, and what sum should under the evidence be assessed as compensation therefor, were questions for the jury. In estimating the same, the fact that appellee's daughter had a husband living who may have been likewise injured is insufficient in itself to bar a recovery of such damages by the father.

It is contended that the trial court erred in instructing the jury that if they believed from the evidence that the act of defendant was maliciously and wantonly committed, in wilful disregard of the rights of plaintiff, they might

assess vindictive, punitive, or exemplary damages.  We do not regard this case as one where the jury was warranted in assessing exemplary damages.  It is not one of seduction or aggravated assault, where the victim is young and inexperienced, or where mere brute force is used.  Appellee's daughter was of mature age and possessed of at least average intelligence.  It may fairly be presumed that she had acquired the knowledge, experience and moral training ordinarily possessed by women of her years, education and social position.  She therefore must have well understood the gross impropriety and immorality of her conduct, as well as the natural propensities and inclinations of the opposite sex.  She was not despoiled of her virtue by artifice or intimidation, nor by the promise or expectation of marriage.  No excessive viciousness, deliberate malice, brutality or other special element tending to aggravate the offense appears to have prompted appellant's conduct. Exemplary damages were therefore not recoverable, and the court erred in giving the instruction referred to, to the jury.

For the error indicated the judgment must be reversed and the cause remanded.

*Reversed and remanded.*