## AIKIN and others, ex'rs, &c. *vs.* MORRIS.

Mortgage cases of the fourth class, are entitled to a preference over other causes of that class, unless an affidavit of merits is filed, and the filing thereof noted on the calendar.

It is not necessary that a new affidavit should be filed at every term at which the cause is noticed for hearing. But to deprive the complainant of the preference given by the 91st rule, the fact of the filing of such an affidavit must be noted upon the calendar at each term.

If mortgage causes of the fourth class are not moved at the time that order of business is called for, they lose their preference, and must be heard, with other causes of the fourth class, in the order in which they are placed upon the calendar.

The preference given to mortgage causes of the fourth class, by the rule of the court, also applies to such causes when they are brought before the chancellor upon appeal, if the decree of the vice chancellor was in favor of the complainant. But where the decree was in favor of the defendant, the legal presumption is that the decree was right; and the cause will not be entitled to a preference although no affidavit of merits is made by the respondent.

Where the decision was in favor of the complainant in the foreclosure suit, however, a new affidavit of merits must be filed in the appeal cause, as well as noted on the calendar; or the respondent will have the right to claim a preference over other causes of the same class, when that class of causes is reached.

To constitute a good defence to a bill for the foreclosure of a mortgage, on the ground of fraud in obtaining such mortgage, it is necessary not only to show that the defendant was defrauded, but also that he was defrauded by the mortgagee, or his agents; or, at least, to show that the mortgagee, at the time of taking the mortgage, was aware that a fraud had been committed upon the mortgagor. And the several facts necessary to constitute the fraud, and to bring home to the mortgagee the knowledge of it, should be distinctly stated in the answer of the defendant.

THIS was an application, by the appellant, to set aside a decree of affirmance. The bill was filed by the executors of W. Aikin, deceased, to foreclose a mortgage, given by the defendant to their testator, upon the undivided twentieth part of a tract of land in the town of Greenbush, to secure a part of the unpaid purchase money of the premises. An answer was put in by the defendant, without oath, setting up several matters as grounds of defence to the suit; and the cause was subsequently heard before the vice chancellor of the third circuit, upon pleadings and proofs. When the cause was first noticed for hearing, before the vice chancellor, an affidavit of merits

Aikin v. Morris.

was filed, as required by the 91st rule of the court, to prevent the case from having a preference over other causes of the same class. But no affidavit was filed at the term when the cause was heard in the court below, though the cause was argued there by counsel on both sides. The vice chancellor made a decree in favor of the complainants; from which decree the defendant appealed. No affidavit of merits was filed in the appeal cause; nor was the fact that an affidavit had been filed in the court below, noted upon the calendar of the chancellor. And when the fourth class of cases was reached, this case was called as being entitled to a preference, as a foreclosure cause, over other causes of that class; and no counsel appearing to argue the appeal on the part of the appellant, the decree of the vice chancellor was affirmed by default.

The counsel for the defendant, who argued the case in the court below, made affidavit that the appeal was taken in good faith, and that he had intended to argue the cause when it should be reached upon the calendar, and that in his opinion the defendant had a meritorious and equitable defence. But the opinion of the counsel for the complainants, as stated in his affidavit, was that there was not even a shadow of a defence made out by the proofs in the cause. And he also produced and read, in opposition to the application, the pleadings and proofs upon which the case was decided by the vice chancellor; to show there was no defence.

*D. Gardner & J. C. Spencer*, for appellant.

*Samuel Stevens*, for the respondents.

THE CHANCELLOR. The decree of affirmance was perfectly regular, according to the settled practice of the court. Mortgage cases of the fourth class are entitled to a preference, over other causes of that class, unless an affidavit of merits is filed, and the filing thereof noted on the calendar. It is not necessary that a new affidavit should be filed at every term the cause is noticed for hearing. But to deprive the complainant

Aikin *v.* Morris.

of the preference given by the 91st rule, the defendant must see that the fact of the filing of such an affidavit is duly noted upon the calendar at every term. The settled practice of the court, upon reaching the fourth class of causes, is to call for mortgage cases of that class; and to hear those as to which there is no note upon the calendar of the filing of an affidavit of merits. And they are then heard in the order in which they stand on the calendar, before any other causes of that class are taken up. But if they are not moved at that time, they lose their preference, and must be heard with other causes of the fourth class, in the order in which they are placed upon the calendar.

The preference given to mortgage cases of the fourth class, also applies to such cases when they are brought before the chancellor upon appeal, if the decree of the vice chancellor was in favor of the complainant. But where the decree was in favor of the defendant, the legal presumption is, that the decree was right; and the cause will not be entitled to a preference, although no affidavit of merits is made by the respondent. In case the decision was in favor of the complainant in the foreclosure suit, however, a new affidavit of merits, in the appeal cause, must be filed, as well as noted on the calendar, or the respondent will have the right to claim a preference, over other causes of the same class, when that class of causes is reached. For counsel, who had advised their client that he had a meritorious defence, before the hearing in the court below, might not be able to do so conscientiously, under his oath of office, after he had heard the arguments of the adverse counsel, and the decision of the vice chancellor upon the merits of the case.

In this case, the excuse appears to be sufficient for not filing an affidavit and noting it on the calendar; as the defendant's solicitor swears that he mistook the practice, by supposing that the last clause of the 91st rule did not apply to appeal causes. I have therefore looked into the pleadings and proofs in this case, for the purpose of seeing whether the counsel, who argued the cause before the vice chancellor, is right in supposing that his client has a meritorious defence. For if he is wrong in

that respect, there is no ground for disturbing the decree of affirmance, which has been entered by his default. It was upon that ground, and to prevent unnecessary delay, that I permitted the counsel on both sides, upon the argument of this motion, to go fully into the merits of the case.

I am inclined to think the vice chancellor is right in supposing that the answer sets up no good defence to this foreclosure suit. To constitute a good defence, it is necessary not only to show that the defendant was defrauded, but also that he was defrauded by the mortgagee or his agents; or at least to show that the mortgagee, at the time he gave the deed to the defendant, and took back a bond and mortgage for the unpaid purchase money, was aware that the defendant had been deceived and defrauded by others, in making the purchase of the undivided twentieth of the premises from them. And the several facts necessary to constitute the fraud, and to bring home to the mortgagee the knowledge of it, should be distinctly stated in the answer. But even if there are sufficient allegations of fraud in this answer to vitiate the bond and mortgage as against the mortgagee, no such fraud is proved.

It is necessary to see the situation in which the different parties were placed in reference to this transaction, in examining the question whether Aikin was concerned in any of the frauds which were practised upon the defendant by others. Aikin, as the owner of the Greenbush farm, had entered into a written agreement with Hardie to sell and convey the farm to him, on or before the first of April, 1836, for the price of $60,000, if he should elect to buy the same within that time, and should pay $20,000 in cash, and give his bond and mortgage upon the whole premises for the residue of the purchase money; payable in eight years, with annual interest. Valentine, being a co-partner with Hardie in the business of buying and selling lands, was jointly interested with him in this contract; although it was given in the name of Hardie alone. Hardie and Valentine afterwards sold half of their interest in this contract to Van Epps and Nicholl. The four persons who had thus obtained the pre-emptive right of purchase at $60,000, from Aikin, fixed

their price of the farm at $100,000; which they divided into twenty shares of $5000 each. They offered the same to purchasers at that price; one-fourth of the purchase money to be paid down, at the execution of the conveyances to the purchasers, and the residue to be paid in eight years, with interest at the rate of six per cent, payable semi-annually. A contract was subsequently entered into between themselves, as the vendors, of the one part, and the defendant and others, as subscribers for the shares, of the other part, to procure conveyances for the several subscribers upon those terms and at that price; the contractors themselves subscribing for some of the shares in their own names. The testimony renders it highly probable that Van Epps employed Ackland to get the defendant and others to subscribe for shares in the farm, upon the false representation that Aikin was selling the farm for the $100,000, and by concealing from them the fact that Hardie and Valentine, and Van Epps and Nicholl, had a contract with Aikin to purchase the farm from him at three-fifths of that sum. But I have not been able to find any evidence that Aikin ever employed either of those persons to act as agents for him; or that he was aware of the fact that they had professed to act as his agents. Nor is there any thing to satisfy me that he knew any false representations had been made, or that he was aware that any of the subscribers were ignorant of the terms upon which he had agreed to sell the farm, and the price he was to receive for it. The declarations of Van Epps are not evidence against the complainants or their testator, to establish the fact of such agency. And for the same reason, the testimony of Wendell, as to what Van Epps told him, was improperly received.

Aikin appears to have been unacquainted with most of the subscribers, and even with some of the assignees of his contract for the pre-emptive right of purchase, until he was sent for to come to New-York to execute the necessary conveyances, to carry into effect the agreement, made by the subscribers for shares, with the holders of his contract. And in those speculating times, when city lots, even in the wilderness, sometimes doubled and even trebled in price in the course of a few weeks,

Mr. Aikin might well have supposed that the persons holding his contract for a farm in the new city of East Albany, had honestly resold the site of that city for nearly double the sum which he had contracted with Hardie to sell it to him for, three or four months previous to that time. Every thing that took place at the time of the execution of the deeds and mortgages, may fairly be accounted for upon that supposition. By reference to the contract with Hardie, it will be seen that Aikin was to be paid $20,000 in cash, and was to receive one mortgage, upon the whole premises, for the residue of the purchase money. But, by the contract between the owners of that pre-emptive right to purchase, and the subscribers for the twenty shares into which the farm was to be divided, each of the subscribers was to have a deed for his own undivided share of the land, and was to give his own bond and mortgage upon that undivided share only. And the interest upon the unpaid purchase money was to be at the rate of six per cent only. It was perfectly natural, therefore, that Aikin should require, of the persons entitled to the benefit of his contract, that all the securities, from them and their sub-contractors, should be taken to himself; to secure the payment of the balance of his $60,000, and interest, beyond what he should then receive in cash. And as the holders of his contract probably had not the money to pay their quarter down, for the shares subscribed for by themselves, it would be necessary to deduct that amount from their shares of the profits upon their resales. The contract was therefore carried into effect in that way. And he took all the moneys and securities into his own hands; to be arranged between him and the holders of his contract, according to their rights and interests therein as between themselves. It is true, the subsequent agreement, with Valentine, states that he had assisted Aikin as his agent in making the sale. But the contract with Hardie, which is also in evidence, shows what the nature of that agency was; and that Valentine in fact contracted to sell the premises for the $100,000, for his own benefit, as one of the owners of the pre-emptive right of purchase. And even if Aikin had in fact employed him as an agent in this matter, there

is no evidence that Valentine either made representations which were false, or concealed any thing which he ought to have disclosed.

No objection was made, in the answer, for want of proper parties; and no foundation for such an objection appears in the bill. Nor is the allegation in the answer, as to the contract between Aikin of the one part, and Van Epps, Valentine and Hardie of the other, proved in this case. No valid objection to the decree, therefore, exists upon the ground of a want of proper parties. If the defendant has been defrauded by Van Epps, or by his agent, and if it should eventually appear that any part of the fund collected on this bond and mortgage belongs to him, perhaps it may be reached by a bill in this court, to prevent its being paid over to him by the executors. But even that is very doubtful. It is sufficient to say, it cannot be reached by any proceeding in this suit.

The decree of affirmance being regular; and the merits of the case entirely with the respondents, the motion to open that decree must be denied, with costs.