BIRDSEYE *vs.* FLINT and wife.

In an action on the case against husband and wife, to recover damages sustained by the plaintiff upon the exchange of a farm belonging to him for one owned by the wife, on account of the fraudulent representations of the defendants, representations made by the wife several months *after* the exchange was completed, cannot be given in evidence on the ground of their being similar to representations made by the husband *previous* to the exchange, and for the purpose of supporting an averment of a joint fraudulent representation by husband and wife.

Nor are such representations legitimate evidence by way of *admisssion*, to prove that the wife had made similar representations previous to the exchange; or that she authorized her husband to make any; or that she had any knowledge of his having made them.

A wife cannot be made liable, in an action on the case, for the fraud of her husband, committed upon the exchange of a farm belonging to her, for another, on the ground upon which a principal is made responsible for the fraud of his agent, or a partnership firm liable for the fraud of one of its members.

Where the husband, while contracting to dispose of his wife's land and of his own interest therein as tenant by the curtesy, makes representations alleged to be fraudulent, he will, in the absence of any evidence to the contrary, be deemed to have made such representations on his own behalf, and not as the agent of his wife.

A married woman has no power to make a contract, so as to bind herself, at law; nor to appoint an agent to contract for her.

Birdseye v. Flint.

A married woman is not liable jointly with her husband, in an action on the case, for a fraud committed by him in a contract for the exchange of her land, on the ground of her having reaped the fruits of his fraud.

THIS was an action on the case, tried at the Onondaga circuit in September, 1845, before WHITING, C. Judge. The jury having found a verdict for the plaintiff, the defendants filed a bill of exceptions and moved for a new trial. The facts, and the questions arising thereon, are stated in the opinion of the court.

*H. A. Foster*, for the defendants. I. The evidence offered of the declarations of Sally Ann Flint in April, 1844, was inadmissible, and the court erred in admitting said evidence. (1.) Because no foundation was laid in the pleadings for any such evidence. The first count of the declaration alleges the false representations to have been made by the defendants on the 24th of Nov. 1843, at the dwelling house of the plaintiff, at the time of the proposition for a trade of the farms. The second count alleges the like representations to have been made by Calvin N. Flint alone. (2.) Because such declarations did not purport to have been made upon any knowledge of said Sally Ann of what her husband had said before the trade, about the Michigan lands, nor in any manner to adopt what he had said. Nor did she know what he had said. And she being a *feme covert*, could not, by any subsequent assent or adoption, of what her husband had said, make herself liable, either *alone* or jointly with him. (*Adams* v. *Freeman*, 9 *John.* 117. 1 *Chit. Pl.* 68, 70, 85, 4*th Am. ed. Co. Lit.* 180, *B.* 4, *n.* 56, *letter S.*) (3.) These declarations did not show any fraudulent intent on the part of Mrs. Flint. (*Moses* v. *Mead*, 1 *Denio*, 378. 2 *Kent's Com.* 5*th ed.* 485, 6. *Morrell* v. *Colden*, 13 *John.* 401, *by Burr, arguendo. Davis* v. *Meeker*, 5 *Id.* 354. *Sandford* v. *Handy*, 23 *Wend.* 260. *Vernon* v. *Keys*, 12 *East*, 632.) (4.) These declarations were made four months after the exchange, and after Calvin N. Flint had rented out the Oswego farm. (*Coles* v. *Marguam*, 2 *Hill*, 448. *Hayden* v. *Palmer*, 3 *Id.* 208.) II. The motion to discharge the defendant Sally Ann Flint

Birdseye *v.* Flint.

when the plaintiff rested should have been granted. (1.) Because there was no evidence whatever against her to charge her with the alleged fraud. (*Bates* v. *Conkling*, 10 *Wend.* 389.) (2.) The ground taken by the circuit judge, that Mrs. Flint was aware of the fraud before the exchange was made, "*because she owned the Michigan farm and received the whole fruits of the fraud,*" is unsound. First. It is unsound in fact, for her husband had a life estate in the Michigan farm before the conveyance, and in the Oswego farm after the conveyance, of greater value than his wife's remainder. Second. It is unsound *in law*, for it is absurd to allege that the ownership of a remainder by the wife affords evidence that she knew of what her husband had said when she was not present. Their interests were not joint but several. (*Gallatian* v. *Cunningham*, 8 *Cowen*, 361, 370, 371. *Fleming* v. *Slocum*, 18 *John.* 403. *Cowen & Hill's Notes*, 298, 484.) (3.) As the defendant Mrs. Flint was no party to the fraud, the plaintiff's only mode of relief, if he has any against her, is in equity, where the court has the power to order the reconveyance of both farms; thus placing the parties in the same condition they were in before the trade. (4.) The principles of this case bear no resemblance to the cases of fraud committed by an agent. (*North River Bank* v. *Aymar*, 3 *Hill*, 268. *Bank of U. S.* v. *Davis*, 2 *Id.* 464. *Nelson* v. *Cowing & Seymour*, 6 *Id.* 336. *Sandford* v. *Handy*, 23 *Wend.* 260. 4 *T. R.* 39. 5 *Greenl.* 302. 6 *Mass.* 245.) A *feme covert* cannot appoint an agent, either separately or with her husband. (*Oulds* v. *Sansom*, 3 *Taunt.* 261. *Graham* v. *Jackson*, 14 *L. J. N. S.* 2 *B.* 129. 9 *Jur.* 275, *cited in* 5 *Harr. Dig.* 829.) (5.) Calvin N. Flint did not profess to act as the authorized agent of his wife. He acted, not as agent, but in his own right; and all *she* could do was to consent. (1 *Bac. Abr.* 476, *tit. Baron and Feme, c.* 1. *Clapp* v. *Stoughton*, 10 *Pick.* 463. *McClain* v. *Gregg*, 2 *A. K. Marsh.* 454. *Miller* v. *Shackleford*, 3 *Dana*, 289.) (6.) Mrs. Flint could not be a party to the fraud complained of. She could not commit *such* a fraud. A wife may commit a fraud, but not in making a contract, unless it be a contract relating to her *sepa-*

Birdseye *v.* Flint.

*rate estate;* or the fraud consists, in part at least, *in misrepresenting her right to contract:* and in either case, the misrepresentation must be made apart from her husband, and under circumstances showing that it was not done by his *direction, authority,* or *consent;* or else a *joint* action against them cannot be sustained. 1st. The subject of the contract was not her *separate estate.* 2d. There was no misrepresentation of her right to contract. The plaintiff knew her to be a married woman. He knew she did not hold herself out as agent. He knew her interest in the Michigan farm, and he was bound to know that she could not contract at all. (*Lane* v. *McKeon,* 3 *Shepl.* 304, *cited in Chit. on Cont.* 160, *Springf. ed. of* 1844. *Jackson* v. *Vanderheyden,* 17 *John.* 167, 8.   *Whitlock* v. *Cook,* 15 *Id.* 438.  *Parker* v. *Manning,* 7 *T. R.* 539.  *Martin* v. *Dwelly,* 6 *Wend.* 12, 13, *in error.  Aldridge* v. *Burlison,* 3 *Blackford,* 201.  *Fowler* v. *Shearer,* 7 *Mass.* 14.  *Colcord* v. *Swan,* 7 *Id.* 291.  *Den* v. *Crawford,* 3 *Halst.* 90.)  A declaration against baron and feme on their joint covenants is bad. (*Wadleigh* v. *Glines,* 6 *N. Hamp. Rep.* 17.  *Park* v. *Hopkins,* 2 *Bailey,* 411.  *See also Jackson* v. *Cairnes,* 20 *John.* 301; *Jackson* v. *Stevens,* 16 *Id.* 110; *Doe* v. *Howland,* 8 *Cowen,* 277 ; *Osgood* v. *Breed,* 12 *Mass.* 525 ; *Roberts* v. *Pierson,* 2 *Wilson,* 3.)  3d. Her acts, when the conveyance was executed, and also in April afterwards, were in the presence of her husband and under his control; and therefore she could not be personally liable for those acts, whether sued jointly with him, or separately in case she married him.  " The husband is liable for the *torts* and *frauds* of the wife, committed during coverture.  If committed in his company, or by his order, he alone is liable." (2 *Kent's Com.* 5*th ed.* 149.)  They cannot be joined for a slander committed by both, nor for slander committed against both.  (1 *Chit. Pl.* 4*th Amer. ed.* 85.)  The husband is liable *alone* for the penalty for his wife's selling liquors without license, during his absence and without his consent. (*Hasbrouck* v. *Weaver,* 10 *John.* 267.)  Generally, for crimes committed by her in his presence, he alone is liable. (*Commonwealth* v. *Neal and wife,* 10 *Mass.* 152.  *Common-*

*wealth* v. *Trimmer and wife,* 1 *Id.* 475.) In regard to crimes, this presumption of law may be rebutted. (2 *Kent's Com.* 5th ed. 149. *See also Martin* v. *Commonwealth,* 1 *Mass.* 347, *and opinion of Sedgwick, J. at p.* 391 *to* 393.)

III. The circuit judge erred in his ruling under the first subdivision of the exceptions to his charge. (1.) Because he refused to charge the jury that there was no sufficient evidence against Mrs. Flint to make her liable. (2.) Because he ruled that the wife might be a party to the fraud, by her concurrence subsequent to the fact. (3.) Because he assumed that Flint was the agent of his wife. (4.) Because he took the ground that the conveyance of the Oswego farm to Flint's wife was evidence of fraud against her. IV. The judge should have charged the jury that the moving of the plaintiff to Michigan was not a proper ground for damages. This was a question of law, and should have been decided by the court.

*B. Davis Noxon & H. R. Selden,* for the plaintiff. I. The evidence of what Mrs. Flint said after the deeds were exchanged was properly received as one circumstance tending to show her knowledge of, and concurrence in, the representations made by her husband before the sale. The declarations of *the parties* in relation to the subject matter of the suit, whether made before or after the transaction on which the suit is based took place, are always competent evidence. No objection to such proof can ever be made except on the ground of its immateriality. And that question cannot generally be decided until the proof is out. (*The People* v. *Hopson,* 1 *Denio,* 577.) And where it is relied upon, as in this case, as a mere circumstance, bearing more or less remotely upon the question of *intent* in a previous transaction, no court would exclude it where it might have any bearing, however remote. (*Leaven* v. *Smith,* 1 *Denio,* 573.) And if admitted where it could have no bearing, the party is not prejudiced by it, and cannot except. How far the judge should go in admitting evidence of remote circumstances, must always, in the nature of things, be a matter of discretion. II. The court decided correctly in refusing to dis-

charge the defendant, Sally Ann Flint. (1.) Because there was, as the court said, some evidence from which the jury might infer that she was aware of the fraudulent representations which had been made by her husband before the exchange was completed. The slightest possible amount of evidence against her was sufficient to prevent her discharge. (*Bates* v. *Conkling*, 10 *Wend.* 389, 392.) And she had all the fruits of the fraud. ( *Wheelan* v. *Wheelan*, 3 *Cowen*, 577, 578.) She saw the map, (one of the chief instruments of the fraud,) during the trade. She said "You will be pleased with the farm; at least we were." She said "we are giving you $1000 or 50 acres of land in the trade"—thus valuing the land at $20 per acre. (2.) Because she was bound by his fraudulent representations on account of their joint interest in the land. (1 *Phil. Ev.* 93, 94, *and notes* 179, 180. *Jackson* v. *Vail*, 7 *Wend.* 125. 15 *John.* 3. 17 *Id.* 335. 18 *Id.* 330. 1 *Phil. Ev.* 85, 86, *and note* 160. 7 *Wend.* 380. 23 *Id.* 268. 6 *Hill*, 339.) And by adopting the agreement, partially made by her husband, she recognized his acts as her agent. (3.) Because no exception lies to such refusal in any case where the party sought to be discharged cannot be examined as a witness. (3 *Hill*, 106, *note (a)*.) In England such discharge can never be claimed as a matter of right. (1 *Holt*, 275.) A different rule has been adopted in this state. (10 *Wend.* 392.) And the reason given for it is to prevent witnesses from being made parties, so as to exclude their testimony. (15 *John.* 223.) "It must often happen, where one defendant is discharged, that the testimony produced by the remaining defendants shows that he ought not to have been discharged." III. The charge of the court was correct with respect to the liability of Mrs. Flint. If she concurred in the fraudulent representations, there can be no doubt of her liability. "Every accessary to a trespass or other tort is a principal, and may be sued as such." (*Culver* v. *Avery*, 7 *Wend.* 380. *Connah* v. *Hale*, 23 *Id.* 470.) This concurrence was designed to be limited by the judge to the time before the exchange was made. This is obvious from what he said on the motion to discharge Mrs. Flint. And if it did not, it was the

duty of the defendants' counsel to call the attention of the court to that distinction, if he wished to avail himself of it. (*Smith* v. *The Gas Light Co.* 1 *Ad. & Ellis,* 526. 28 *Com. Law Rep.* 140. *Pott* v. *Bevan,* 1 *Car. & Kirwan,* 335. 47 *Eng. Com. Law Rep.* 335.) But Mrs. Flint was equally liable, if she concurred in the fraudulent representation, as she held the whole fruits of the fraud. (*Prince* v. *Clark,* 1 *B. & C.* 186. 8 *Eng. Com. Law Rep.* 54. *Wilson* v. *Tumman,* 6 *Man. & Grang.* 236. 46 *Eng. Com. Law Rep.* 241. *Comforth* v. *Fowke,* 6 *M. & W.* 87.) She could not retain the fruits knowingly, (which is implied in the term *concurrence,*) and repudiate the fraud by which they were gained. She was also equally liable if her husband acted as her agent. (13 *Wend.* 518. 23 *Id.* 268. *Story on Agency,* § 135 *to* 139.) This is well settled where there was a prior employment as agent. (*Bank of U. S.* v. *Davis,* 2 *Hill,* 461, 462.) And the same rule applies where the agency arises from the subsequent adoption of the act. (6 *Hill,* 337. *Story on Agency,* §§ 251, 253.) For another reason the charge was right. The wife was bound by her husband's fraudulent representations on account of their joint interest; she consenting to the arrangement made by him on their joint account, and joining him in carrying it out. IV. The testimony as to the expenses of removal to Michigan, was properly received; and the charge of the judge on the subject of damages was correct. "If the defendants *knew* that the plaintiff's removal to Michigan would follow the trade, they might consider such expenses," &c. This was sufficiently guarded. It leaves it to the discretion of the jury in the end. (*Driggs* v. *Dwight,* 17 *Wend.* 71. *Jeffrey* v. *Bigelow,* 13 *Id.* 518. *Blanchard* v. *Ely,* 21 *Id.* 342, 349.) Even in an action on contract, the rule is laid down "where the vendee sustains any other damage (besides the difference in value of the property,) which is the direct and immediate consequence of the failure of the vendor to perform the contract on his part, or such as may be presumed to have been contemplated by the parties, the vendee may, in a special action on the contract, recover such damages." (*Long on Sales, Boston ed. of* 1839,

Birdseye *v.* Flint.

*pp.* 479, 480.   *Sedgwick on Damages*, 94, 95, 96, 564.   *Sherwood* v. *Sutton*, 5 *Mason*, 1; *cited by Sedgwick at page* 564.)

*By the Court*, GRIDLEY, J.   The plaintiff has recovered against the defendants jointly, a verdict of $1600, in an action on the case for damages sustained upon an exchange of farms, induced by certain fraudulent *r*epresentations made by the defendants.   The fee simple of the farm conveyed to the plaintiff was owned by the defendant Sally Ann Flint.   And the fraudulent representations are alleged in the declaration to have been made by both defendants at the dwelling house of the plaintiff in Palermo, in the county of Oswego, on the 24th day of November, 1843.   It is further averred that by means of these false representations the plaintiff was induced to make the exchange, which was consummated on the 4th day of December following, by the execution and delivery of the proper conveyances to carry out the contract.   The farm conveyed by the defendants to the plaintiff, was situated in the state of Michigan, and the defendants resided, at the time of the exchange, in the county of Madison, and the plaintiff in Palermo aforesaid ; and the parties were strangers to each other previous to the negotiation.   Evidence was given, on the trial, of the' negotiation, and of certain false representations concerning the Michigan farm, made by the defendant Calvin N. Flint, at the plaintiff's house at Palermo, on or about the 24th of November, 1843 ; but it was proved that Sally Ann Flint was not present at the negotiation, nor when any of the false representations were made by her husband.   There was no proof that she made any representations herself until April, 1844, some four months after the deeds were delivered.   It was shown in the course of the trial, that while at Palermo, the defendant C. N. Flint made a map of the Michigan farm, which he alleged to be a correct representation of it.   This map, it also appeared, was present at the house of Sylvester .Beecher, the father of Mrs. Flint, on the 4th of December, when the respective deeds to consummate the exchange were executed by the parties ; and that on that occasion Mr. Beecher altered it so as to make

it a more accurate representation of the farm. On the trial evidence was given showing this map to be incorrect, and some evidence was given tending to show it a fair representation of the premises. The bill of exceptions shows that Mrs. Flint was at her father's house on the day it was so altered, and at the time when the map was altered; but there was no evidence that she saw the map on that day, or knew of the alteration, or heard any thing said concerning it.

At this stage of the trial, the plaintiff offered to show that in the month of April, 1844, and before the plaintiff and his family had left the Oswego farm, the defendants came to the residence of the plaintiff in Palermo, and that then the defendant Sally Ann Flint made representations to the plaintiff similar to those made by her husband, before the deeds were executed. This testimony was objected to, but admitted by the judge. And thereupon it was proved by a son of the plaintiff that Mrs. Flint answered to questions put to her by the witness, that the exchange was an even one; that she thought the plaintiff had made a thousand dollars by the trade. The map was also exhibited on this occasion, and she expressed the opinion that it was drawn correctly; and said to the plaintiff, " You will be charmed with the farm; at least we were." To the admission of this evidence the defendants' counsel excepted.

I. Now, upon this state of the case, we are of the opinion that in receiving this evidence the circuit judge erred. We see no possible ground upon which its admission can be sustained. (1.) It was received under an offer to show similar representations to those made by her husband on the 24th of November, 1843, and to support the averment of a joint fraudulent representation, relying on which, the plaintiff was induced to make the exchange of farms. That the plaintiff could not have been induced to make the exchange by representations made four months after the conveyances had been exchanged, is too plain a proposition to be argued. It would have been erroneous to admit such representations made by Calvin N. Flint himself. (2.) Nor do we think that these representations amounted to any evidence of a previous authority to her husband to make

the representations on the 24th of November.   They were not offered as *admissions*, nor were the declarations of Mrs. Flint proved by young Birdseye, in the *form of admissions ;* nor was there the slightest allusion to any representations previously made by her husband.   On the contrary, they professed to be, and they were in truth, nothing more than a present assertion of a fact and the expression of an opinion then entertained by her.   It is a part of the case, that the parties living in different counties, and being strangers to each other, met for the first time on the 24th of November, the defendant Flint having been induced to call by seeing a sign on the premises indicating that they were for sale.   Her remark as to the accuracy of the map, carries with it no evidence that she had ever before seen it, much less that she had been concerned in its use by her husband, to deceive the plaintiff.   It was shown to her by young Mr. Birdseye, or she happened to see it during the conversation, and made the observation that she thought it was drawn accurately.   These declarations therefore were not *legitimate evidence*, by way of admissions, to prove that Mrs. Flint had ever made similar representations before the exchange of farms ; or that she authorized her husband to make any; or that she had any knowledge that he ever did make any.   We think, therefore, that the evidence in question was erroneously admitted.

II. If we are right in the conclusion to which we have thus arrived, then there is *no evidence* against Mrs. Flint upon which the verdict against her can rest.   It is indeed presumed that she was at the house of her father on the day when the deeds were executed, and when her father made some corrections of the *map* mentioned in the bill of exceptions; but it is not proved that she *saw* the map, that she heard what her father said concerning it, or that she then had any knowledge of its existence.   It cannot be maintained that this is enough to charge a party with the consequences of a fraud like this, were it alleged in the declaration, which it is not.   (*See Ward v. Center,* 3 *John. Rep.* 271 ;  18 *Id.* 403 ;  8 *Cowen's Rep.* 361.)

III. It is said that Mrs. Flint is responsible for the frauds of her husband upon the ground which makes a principal liable

for the frauds of his agent; and a partnership firm liable for the frauds of one of its members. We, however, cannot assent to the applicability of this principle to the present case, for several reasons. (1.) The defendants were not partners in any sense of the term. Mrs. Flint was the owner of the fee of the land, and her husband was tenant by the curtesy; and that relation gave him no authority to contract in relation to her interest. Nor was he her agent in fact, (irrespective of her incapacity at law to create an agent.) Nor did he profess to act for her. On the contrary, he informed the plaintiff that if he would come out to Madison county, " *he guessed his wife, who held the deed, would consent ;*" thus disclaiming any right or authority to act for her, and giving the plaintiff to understand that she must consent and act for herself. The husband was contracting to dispose of his own interest in the premises of his wife, and (in the absence of any evidence to the contrary) he must be deemed to have made the representations on his own behalf, notwithstanding the disposition of his own interest in the farm was dependent on the election of his wife to dispose of her interest also. There is therefore no ground for saying that the representations were made by the husband as agent of the wife, and still less, that she adopted these representations, after they were made, and therefore became responsible for them. (2.) Mrs. Flint could not be liable for the acts of her husband upon the ground that he was her agent, for still another reason. She could not *appoint an agent*. She could not contract herself, nor appoint an agent to contract for her at law. Her contracts in relation to her separate estate, could be enforced in equity, but she had no power to contract so as to bind herself at law. Nor could she do this by an agent. Suppose she had, under her hand and seal, appointed her husband her agent to dispose of her land, and he had acted under the power; the contract would have been void at law; and the appointment of an agent to do a void act would have been void also. I speak now of her contracts and those of her agent as they would be regarded in a court of law; for we have no concern here with any rights that might be enforced in a court of

Birdseye v. Flint.

equity.   These principles are so familiar that it is unnecessary to cite cases to prove them.   (3.) Again; it is said that Mrs. Flint reaped the fruits of the fraud of her husband, and is therefore liable.   *He* reaped the fruits of his *own* fraud.   *His* interest in the farm may have been even more valuable than her's.   She was however, unquestionably, somewhat benefited by the fraud of her husband.   But we cannot believe she is liable for that fraud, *jointly* with him in this action.   If she is liable on *that ground,* he of course is liable *jointly with her.*   But, to what amount?   Clearly not to the amount of the entire difference in the value of the two farms.   Suppose A. & B. are tenants in common of a farm;  A. owning $\frac{9}{10}$ths, and B. $\frac{1}{10}$th of it; and A. proposes to C. to exchange this farm for one owned by C., and induces him to consent to the exchange by fraudulent representations, telling him, however, that he has no authority to consent for B., but he believes that B. will consent; and B. *does* consent; and the farms are exchanged, without any fraud on the part of B., or knowledge that A. had been guilty of any.   Now, in this case, B. has to some extent, though innocent, been benefited by the fraud of A.   It is difficult to conceive, however, that he would be liable, in an action on the case, to C.; (*Aikin* v *Morris,* 2 *Barb. Ch. Rep.* 144;) and still less, that he would be liable in a joint action with A., and to the amount of the entire difference in the value of the two parcels of land.   The case at bar is, in principle, precisely similar.   If we grant the right of action at all, as against Mrs. Flint for the fraud of her husband, *upon the ground that she was benefited by it,* then the defendants are jointly liable for the difference between the value of Mrs. Flint's estate in the two farms respectively.   But the defendant, Calvin N. Flint, would be *solely liable* for the difference between the value of his own interest in the two farms.   It seems to us, therefore, quite clear that these two causes of action cannot be united in one suit.   By joining them, Mrs. Flint is made responsible for the damages which are chargeable upon her husband alone, as well as for those chargeable against her.

There are other very grave objections against the right to

sustain this action, which we have not considered necessary to examine. We see no evidence upon which *Mrs. Flint* can be made liable. If the defendant, Calvin N. Flint, was irresponsible, the plaintiff's true course was to have filed his bill in chancery to rescind the contract of exchange, as soon as he discovered the fraud that had been practised upon him.

New trial granted.

